(17 App. Div. 422.)

RICHARDS v. HAYES.

(Supreme Court, Appellate Division, First Department.    May 7, 1897.)

1. MASTER AND SERVANT—DEFECTIVE APPLIANCES—CONSTRUCTION BY SERVANT.
   Where a servant, as an incident to his work, is obliged to construct a scaffold, it is the master's duty to furnish suitable materials therefor.

2. SAME—VICE PRINCIPAL.
   A servant of plaintiff, who, as an incident to his work, was obliged to construct a scaffold, was unable to find suitable materials about the premises, and he so informed the foreman, to whom he had been directed to report when employed. The foreman told him to use an appliance that had been used in another kind of work. This appliance was not suitable for plaintiff's work, and the foreman undertook to adapt it thereto, after which he told plaintiff that it was a good scaffold, and to go on with his work. *Held*, that the foreman was not a fellow servant with plaintiff as to the construction of such scaffold, but was a vice principal.
   Rumsey and Williams, JJ., dissenting.

Appeal from trial term, New York county.

Action by James Joseph Richards against George Hayes for personal injuries. From a judgment dismissing the complaint, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before RUMSEY, WILLIAMS, O'BRIEN, INGRAHAM, and PARKER, JJ.

Alfred Pagelow, for appellant.
Alexander T. Goodwin, for respondent.

INGRAHAM, J.    The rules of law applicable to cases of this character have been settled by late adjudications of the court of appeals and of this court, and we have to meet only the difficulty of applying such rules to the particular facts of this case.    That the obligation rests upon a master to exercise care in the selection of a safe place in which his employés are to do their work, together with proper and safe implements with which to work, is recognized and has been applied in many cases in this state.    The duty to furnish proper and safe implements and appliances applies wherever, from the nature of the work to be done, or from the position that is required to be taken by the employé in doing the work, it is necessary that such appliances should be furnished to the employé before he can do the work or perform the services which he is employed to do or perform.    A distinction has, however, been applied, so that where it appeared that as a part of, or an incident to, the work which the employé was to do, such employé is required to erect a scaffold or other appliance necessary to do the work, a negligent erection of such scaffold was not a neglect to perform a duty that the employer owed to his employé.    We have had occasion lately, in the case of McCone v. Gallagher (not yet officially reported) 44 N. Y. Supp. 697, to call attention to this principle established by the later decisions of this state, and it is not necessary to repeat what was there said.    It is settled, however, that where a person is employed to do a piece of work, and, as an incident to the doing of that work, has to construct a scaffold, while the negligent construction of that scaffold is not

a violation of any duty that the master owes to his employés, there is still an obligation upon the master, the neglect of which renders him liable to any one sustaining damages in consequence of such neglect, and that is the obligation to furnish suitable materials for the construction of a suitable scaffold.    The rule is thus stated in one of the late cases in the court of appeals (Kimmer v. Weber, 151 N. Y. 422, 45 N. E. 860):

"It was not enough to prove that the scaffolding gave way under the circumstances, resulting in an accident, or that it was in fact defective, unless it was made to appear that this was the proximate result of an omission of duty on the part of the defendants or their foreman.    If they furnished suitable materials for the construction of a proper platform, and the workmen themselves constructed it according to their own judgment, the defendants were not liable for the manner in which they used the material so furnished.    The master is not responsible for the negligent performance of some detail of the work intrusted to the servant, whatever may have been the grade of the servant who executes such detail.    If it is the work of the servant, and he volunteers to perform it, and the master is not at fault in furnishing proper materials, there is no breach of duty on the part of the latter."

In this case it became the duty of this plaintiff, with a fellow servant, to work upon the inside of an elevator shaft, upon a building being erected by the defendant.    To do such work, a platform or scaffold of some kind was necessary.    The plaintiff, in connection with a fellow workman, looked for some plank with which to build that scaffold or platform.    There was no plank found upon the premises, the defendant having failed to furnish any that were of sufficient length or proper to be used for such purpose.    The plaintiff then reported to the foreman, to whom he had been directed to report when employed, that there were no planks long enough to reach across that well hole, and asked him what they should do.    The foreman saw what is described as a "jack" in the well hole, which was a platform that had been used by the men in erecting the elevator. He directed the plaintiff and his associate to "get down and pull that up,"—referring to this jack.    The jack having been pulled up, the foreman directed that it be fastened in its position, and then asked the plaintiff to get some short planks with a piece of rope.    These having been procured, the foreman directed the plaintiff's associate to fasten these short planks with the rope to the jack, and, this having been done, the foreman jumped down upon the scaffold thus constructed under his direction, and said:    "That makes a good scaffold, and will hold a house.    Now, go ahead, and I will see what the other fellows are doing."    And with that he left them.    The plaintiff and his associate, following this direction, went upon the scaffold, and started to do their work, when the jack gave way.    The plaintiff and his associate were thrown down to the bottom of the shaft, and the plaintiff sustained the injuries to recover for which this action is brought.    This jack thus used by the defendant's foreman belonged to the contractor for an elevator, and was used by the elevator men in connection with doing their work in the elevator shaft.    The jack was operated with a block and fall, by which two men upon it could draw themselves up or lower themselves down at will.    It was not intended for any service other than the use of

the men in the construction of the elevator, and for such use the weight of the men would be distributed in the center of the jack. It was not designed for men to make use of in such a way that there would be any lateral strain upon it in either direction. It was constructed of hemlock boards nailed together in the form of a platform, and there were cleats to keep the jack steady, which were pieces of board probably eight inches long and six inches wide fastened onto the platform, and which passed up and down the post or guide. Of these there were eight, four on each side, two on the bottom, and two on the top, but moving freely on either side of the guide post. The purpose of them was merely to steady the jack. They were not intended to bear any weight or pressure on either side. The accident was caused by the breaking of some of these cleats. All the rest of the jack was intact. In consequence of the use to which the jack was put under the direction of the defendant's foreman, the weight came upon these cleats, which it was not intended they should bear; and in consequence thereof the cleats broke, and the plaintiff fell and sustained the injury complained of.

The evidence of the constructor of the elevator was that this jack was perfectly safe for the use that they made of it, but that it was not adapted for the work that the plaintiff was required to do, if they were required to work out to the end of the jack, because in that case the weight would come upon the cleats, and they were not of sufficient strength to bear it. The witness used this jack both before and after the accident, simply repairing the broken cleats, but used it in such a way that the weight would come not upon the cleats, but upon the rope that held the jack in its place. It is apparent that, to do the work that the plaintiff was required to do, it was necessary that he should stand out upon the edge of this jack, so that the weight would come upon the cleats. This was what he actually did, and was what caused the accident which resulted in the injury. The court below held that there was no evidence to justify a finding that the defendant was negligent, and dismissed the complaint. The work that this plaintiff was required to do was to line this elevator shaft with what is called a "patent lathing," which receives the plaster. It does not appear that he was a carpenter, or familiar with the construction of scaffolds of this kind. When it became necessary for him to work upon the inside of this elevator shaft, to enable him to work there in safety it became the duty of the defendant, as employer, either to furnish him with a fit and proper appliance upon which to stand so as to do the work, or to furnish him with proper materials from which such a structure could be constructed. The appliance to be furnished was necessary for the work that the plaintiff was required to do, and such work required that he should stand upon the edge of the structure, so as to be near the side of the elevator shaft. If the master undertook to furnish a complete scaffold for such purpose, he was bound to furnish one that was reasonably safe to do the work that the employé was required to do. If he did not undertake to furnish a complete structure for that purpose, he was at least bound to furnish good and sufficient materials from which such a structure could be constructed.

All of the cases recognize this obligation upon the master, and that, where the workmen were thus required to construct the scaffold upon which to do the work, the duty upon the master was to furnish his employés with proper and suitable materials for the construction of a platform.

Now, upon the facts before stated, it is quite apparent that the master failed in his duty to furnish suitable materials for the construction of this scaffold or platform. There were no planks furnished that were of sufficient length to construct a platform, and that fact was reported to the foreman in charge of the work. The foreman then undertook to supply the materials for the making of this scaffold, by directing the use of this jack, which had been furnished by another contractor for an entirely different purpose. He superintended the lashing of the planks to the jack, which would enable the plaintiff and his associate to stand in the inside of the elevator shaft, in a position necessary to enable them to do the work; and he instructed them to use this platform, so constructed, for the purpose named. If this jack had been proper for that purpose, or if the jury should find that the materials furnished—the jack and the planks—were suitable materials with which to make a safe platform, then the master would have performed all of his duty; and the fact that the plaintiff and the foreman together improperly combined these materials would not be a neglect of a duty which the defendant owed to his servants. It being thus apparent that it was the master's duty to furnish either a suitable platform or scaffold for doing the work that the plaintiff and his co-employés were required to do, or proper and suitable materials for the construction of such a platform, the question is whether there was evidence which would sustain a finding that the master failed to perform that duty, and whether or not there was evidence which would sustain a finding that the injury to the plaintiff was caused by the neglect of duty that the defendant thus owed to the plaintiff. This must largely depend upon the relation that this foreman bore to the parties to this action, in directing the work which was done in furnishing this platform or scaffold, or in providing the materials of which it was to be constructed. If this plaintiff and his co-employés had, without specific instruction from the master, or one acting for the master and under his authority in the performance of the duty which he owed to his employé, constructed this scaffold of improper material, it would undoubtedly be a case where the negligence was that of a fellow employé or co-servant with the plaintiff, for which the master would not be liable. Where, however, there was furnished to the plaintiff and his co-employés materials with which to construct this scaffold, which were not proper for the purpose, and which made the scaffold, when constructed, an unsafe and improper appliance for the doing of the work, then it seems to me that, if the master employed a person to act in his place to furnish such material, the negligence of such person so appointed to act for the master in the discharge of the duty which he owed to his employés was the negligence of the master, for which the master was responsible. In all the uncertainty that has arisen upon this question by reason of cases which to some

extent appear to be contradictory, and are at least most difficult of reconciliation, this principle has always been upheld, and I know of no case in which it has been overruled or questioned. The difficulty that has arisen has been in determining whether, in a particular case, the duty that the foreman or representative of the master had undertaken to perform was a duty which the master owed to his servants or employés, or a duty that the employés were to perform for the master; and, so far as I know, in every case where it appeared that the foreman, or one appointed by the master to represent him, attempted to perform a duty that the master owed to his servant, and was negligent in such performance, the master was held liable. The principle is clearly stated in the late case of McGovern v. Railroad Co., 123 N. Y. 280, 25 N. E. 373, where the chief judge of the court of appeals, in delivering the opinion of the court, says:

"When directing the performance of work by the servant in a place which may become dangerous, and such danger may be foreseen and guarded against by the exercise of reasonable care and prudence on the part of the master, it is his duty to exercise such care and adopt such precautions as will protect the servant from avoidable danger. This is the master's duty, and however he may choose to exercise it,—whether through a superintendent, or some lower grade of employment,—it still continues his duty, and not until he shows that it has been properly performed can he claim exemption from liability for injuries occasioned by its nonperformance."

And in the case of Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449, the court applied the same principle to the duty of a master in providing his servants with fit and proper appliances, or materials for their construction, necessary for the performance of the work which they were employed to do. Now, applying this principle, it seems to me quite clear that Mohl was acting for the master in the performance of the duty that the master owed to the workmen employed upon this particular piece of work. He was in charge of the work, and it was to him that the plaintiff was directed to apply for instructions when he was employed. It was to him that the plaintiff reported the fact that there were no materials furnished by the master for the construction of this platform or scaffold, and he it was who then undertook to furnish to the workmen materials to be used for the construction of such scaffold. As before stated, this was the master's duty, the performance of which was undertaken by Mohl, his foreman and representative. In the discharge of that duty, he furnished this jack; and whether he purchased the jack, or borrowed it from its owner, was entirely immaterial, so far as it affected the duty that he owed to the plaintiff. The foreman, representing the master in the performance of the duty of furnishing this plaintiff with an appliance with which to do this work, or materials for its construction, furnished this jack, and directed the plaintiff and his co-employés to use it in doing the work that the defendant had employed the plaintiff to do; and the evidence shows that this jack was an improper appliance, or was improper material for the construction of an appliance, to do the particular work that the plaintiff was required to do. And I can see no reason why this act of the defendant's foreman in assuming to discharge the duty that he owed to the plaintiff was not an act for which the master was responsible, and

which, in an essential particular, failed in the performance of the duty the master owed to the plaintiff, and for which the master was responsible.

The question as to the contributory negligence· of the plaintiff, or, in other words, whether it was a negligent act of the plaintiff to use this jack for this purpose, under all the circumstances, was, I think, clearly a question for the jury. The plaintiff was not a constructor of scaffolds, assumed to be familiar, or to have the same familiarity as the master, with the requirements of the materials necessary to construct a proper platform or scaffold. He was employed and required to work in this well hole, which certainly was a place of danger unless the scaffold used or provided for use was strong and safe. It is perfectly apparent that he had no discretion as to the choice of materials from which to construct the scaffold. The only material that could be used for that purpose, or that was furnished by the master, was the jack which the master, through his representative, had furnished and directed the servant to use; and it certainly was at least a question for the jury to say whether or not the defects in this jack were so apparent to the plaintiff as to· make it improper for him to use it, or whether it was such an improper scaffold, when constructed, that it was contributory negligence for plaintiff to use it.

It seems to me, therefore, that, both as to the question of the negligence of the defendant and the contributory negligence of the plaintiff, the question was one for the jury; and the judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

· O'BRIEN and PARKER, JJ., concur. RUMSEY and WILLIAMS, JJ., dissent.