(125 N. W. 1045.)

---

FRED LANG v. HARRY H. BAILES AND WILLIAM M. PERKINS, CO-PARTNERS DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF BAILES & PERKINS.

Opinion filed March 12, 1910.

Rehearing denied April 13, 1910.

**Appeal and Error — New Trial — Judgment Notwithstanding the Verdict — Conflicting Evidence.**

1. An order denying a motion for a new trial or for judgment notwithstanding the verdict, which is based upon the insufficieny of the evidence to justify the verdict, will not be disturbed where it appears that there is a substantial conflict in the evidence.

**Master and Servant — Safe Place to Work — Delegation of Duty — Negligence of Vice Principal.**

2. The rule as to the duty of a master in respect to providing a safe place to work is not applicable to a case where a servant is injured by reason of defects in, or insufficiency of a temporary structure such as a scaffolding or framework for supporting heavy materials, which are appliances or instrumentalities by means of which the work is done. When, by the express or implied contract between the master and servants, the former undertakes to furnish the necessary tools or appliances, it is his duty to use ordinary care to see to it that such instrumentalities are safe and suitable; and this duty, when it exists, is one of the absolute and personal duties. Any servant to whom the master delegates it is pro hac vice, a vice principal, for whose negligence the master is responsible.

**Master and Servant — Instructions — Harmless Error.**

3. The trial court charged the jury that "it was the duty of the defendants to use ordinary care to furnish for the plaintiff and his fellow workmen a staging that was reasonably safe for the purpose for which it was intended and used; and if you find that the defendants negligently failed to perform this duty, and furnished a staging that was unsafe, and that the plaintiff, while in the exercise of ordinary care and without negligence upon his part and without knowledge of the unsafe condition of the staging, went upon the same to perform his work in the ordinary way, and by reason of the defect therein, if any, fell to the ground and was injured, then plaintiff is entitled to recover."

This instruction is undoubtedly erroneous, as it assumes as a fact that the employers were under a legal duty to furnish the scaffold as a completed structure, but in view of the fact that the jury found that the defendant instructed the carpenters to build the staging, and that they undertook to become responsible for the safe building of such staging, its giving is held not prejudicial error.

Ellsworth, J., dissenting.

Appeal from District Court, Grand Forks County; *Templeton,* J.

Action by Fred Lang against Harry H. Bailes and William M. Perkins, co-partners, doing business under the firm name and style of Bailes & Perkins. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, and from a judgment in favor of plaintiff defendants appeal.

Affirmed.

*Guy C. H. Corliss,* for Appellants.

If the master furnishes material for the construction of an appliance which he has not undertaken to construct, and the workman constructs it, the master is not liable for the manner of construction.

Butler v. Townsend, 126 N. Y. 107, 26 N. E. 1017; Kimmer v. Weber, 151 N. Y. 418, 45 N. E. 860; Fraser v. Red River Lumber Co., 47 N. W. 785; Olsen v. Nixon, 40 Atl. 694; Pfeiffer v. Dialogue, 46 Atl. 772; Phoenix Bridge Co. v. Castleberry, 131 Fed. 175; Hutton v. Holdbrook, etc. Co., 139 Fed. 734; Peschel v. Ry. Co., 62 Wis. 338, 21 N. W. 269; Burns v. Sennett, 33 Pac. 916; Noyes v. Wood, 36 Pac. 766; Beesley v. Wheeler, 61 N. W. 658; Adasken v. Gilbert, 43 N. E. 199; Brady v. Norcross, 52 N. E. 528; Benn v. Null, 21 N. W. 700; Ross v. Walker, 21 Atl. 157; Kellea v. Faxon, 125 Mass. 485; O'Connor v. Rich, 164 Mass. 560, 42 N. E. 111; Lambert v. Pulp Co., 47 Atl. 1085; Garrow v. Miller, 47 Atl. 1087; Hoar v. Merritt, 29 N. W. 15; 26 Cyc. 1329.

The fellow servant rule prevails in this case. Sec. 5544, Rev. Codes 1905; Ell v. N. P. Ry. Co., 1 N. D. 336, 48 N. W. 222. The vice-principal rule is repudiated. Richards v. Hayes, 3 Am. Neg-Rep. 267; Peschel v. Ry Co., 62 Wis. 338; Noyes v. Wood, 36 Pac. 766; Leishman v. Union Iron Works, 83 Pac. 30; 20 Cyc. 1330 and note; Metzler v. McKenzie, 76 Pac. 114; 2 Labatt M. & S. 1790; Garrow v. Miller, 47 Atl. 1087; As repudiating the "different department" rule. Fraser v. Red River Lbr. Co., 47 N. W. 785; ........ ......... ........... ........... . Pfeiffer v. Dialogue, supra; Beesley v. Wheeler & Co., 27 L. R. A. 266; Hogan v. Field, 44 Hun. 72; Butler v. Townsend, 126 N. Y. 107, 26 N. E. 1017; Kellea v. Faxon, supra; Hoar v. Merritt, 29 N. W. 15.

Erecting of a temporary scaffold is a servant's work, although one class of servants erect it for the use of another. Butler v. Townsend, supra; Fraser v. Red River Lbr. Co., 47 N. W. 785; Pfeiffer v. Dialogue, supra; Beesley v. Wheeler, supra; Kellea v. Faxon, supra; Lambert v. Pulp Co. supra.

*Bangs, Cooley & Hamilton,* for Respondent.

Facts found by a jury are as conclusive upon the appellate court as if proven by uncontradicted legal proof. Taylor v. Jones, 3 N. D. 235; 55 N. W. 593; Black v. Walker, 7 N. D. 414, 75 N. W. 787; Muri v. White, 8 N. D. 58, 76 N. W. 503; Howland v. Ink, 8 N. D. 63, 76 N. W. 992; Becker v. Duncan, 8 N. D. 600, 80 N. W. 762; Heyrock v. McKenzie, 8 N. D. 601, 80 N. W. 762; Magnusson v. Linwell, 9 N. D. 157, 82 N. W. 743; Flath v. Casselman, 10 N. D. 419, 87 N. W. 988; Drinkall v. Movius State Bank, 11 N. D. 10, 88 N. W. 724.

Where staging has been furnished by the master, he is liable for his neglect to make it safe. Chambers v. Am. Tin Plate Co., 129 Fed. 561; Cadden v. Am. Steel Barge Co. 88 Wis. 409, 60 N. W. 800; Ch. & A. R. Co. v. Scanlan, 170 Ill. 106, 48 N. E. 826; Ch. & A. R. Co. v. Maroney, 48 N. E. 953; Edw. Hines L. Co. v. Ligas, 50 N. E. 225; Kelly v. R. R. Co., 48 Pac. 843; Coughtry v Globe Woolen Co., 56 N. Y. 124; McNamara v. MacDonough, 102 Cal. 575; 36 Pac. 941; Donnelly v. Booth Bros., 37 Atl. 874 White v. Wm. Perry Co., 76 N. E. 512; Brown v. Gilchrist, 45 N. W. 82; Kan. Cy. Car & F. Co. v. Sawyer, 53 Pac. 90; Sims v. Am. Steel Barge Co., 56 Minn. 68, 57 N. W. 322; Arkerson v. Dennison, 117 Mass. 407.

Where a servant is performing a duty personal to the master and non-delegable, the master is responsible for his negligence. Lindaell v. Woods, 48 Fed. 62; Killea v. Faxon, 125 Mass. 485; Kan. Cy. Car & F. Co. v. Sawyer, supra; Roche v. Denver etc. R. Co., 73 Pac. 880; Lewis v. Seifort, 116 Pa. St. 628, 11 Atl. 514; Jacques v. Gt. Falls Mfg Co., 66 N. H. 482, 22 Atl. 552; Benzing v. Steinway, 5 N. E. 449; Mast v. Kern, 54 Pac. 950; Kelly v. Erie Tel. & Tel. Co., 25 N. W. 706; A. T. & S. F. R. Co., v. Moore, 29, Kan. 452; Haskell v. Cape Ann Anchor Wks., 4 L. R. A. (N. S.) 220, notes; Balt. & O. R. Co., v. Baugh, 149 U. S. 368, 37 L. Ed. 772; Coffeyville V. B. & T. Co. v. Shanks, 76 Pac. 856; Beesley v. Wheeler, 61 N. W. 658.

The "Vice-Principal" rule was not abrogated by section 5544 Rev. Codes 1905. Nor. Pac. R. R. Co. v. Herbert, 116 U. S. 642, 29 L. Ed. 755; Ell v. Nor. Pac. R. Co., 1 N. D. 336, 48 N. W. 222; Meehan v. Gt. Nor. Ry. Co., 13 N. D. 432.

Admission of incompetent testimony is harmless error, if there is other sufficient competent evidence to sustain a verdict. Fowler v. Iowa Land Co., 99 N. W. 1095; Cairncross v. Omlie, 13 N. D. 387, 101 N. W. 897; Waldner v. Bowdon State Bank, 13 N. D. 604, 102 N. W. 169; Union Cent. L. Ins. Co. v. Prigge, 96 N. W. 917.

CARMODY, J. This action was brought to recover damages for personal injuries for the alleged negligence of the defendants. A verdict was rendered in favor of the plaintiff for $2,500. A motion for a new trial and for judgment notwithstanding the verdict was made; the defendants having moved for a directed verdict at the close of all the evidence. This motion was denied, and the appeal is taken from the final judgment, and from the order denying such motion. At the time of the injury complained of, the relation of master and servant existed between the plaintiff and the defendants. Plaintiff's injury was sustained by reason of the breaking of one of the portlocks upon a scaffold on which plaintiff, who was a mason, was doing brick work. The evidence shows that the portlock was defective because of a large knot in the same, rendering the sound timber of the portlock insufficient to bear very heavy weight. The building upon which the plaintiff was working when injured was a small receiving vault, which was being constructed by defendants under contract. The walls of the building were of brick, and at the time the scaffold broke the plaintiff was working thereon, on the east gable end of the building; the scaf-

fold being about 21 feet from the ground. The masons had constructed some of the scaffolds previously used on the building, and had had something to do with this scaffold. As the brickwork was carried up towards the roof, the scaffold in question had to be raised to different levels from time to time. Two of the carpenters did the work in raising the scaffold to the last level. While this level was being constructed by the carpenters, the plaintiff and one Bacon, a brick mason, were at work on the west end of the building. When they were ready to use the scaffold, they found it a complete structure and ready for their use. They, however, did some work in bracing and changing the scaffold.

Counsel for plaintiff concede that there was plenty of good material, furnished by defendants, out of which the scaffold might have been constructed without using the defective timber. At the request of the court, the jury, in addition to their general verdict, made certain special findings of fact as follows.

"Question No. 4. Did the defendant Perkins tell the plaintiff or Bacon, or either of them, the day the plaintiff was injured that he (Perkins) would see to having the staging built on which the plain- was injured? Answer. Yes.

"Question No. 5. Did the defendant Perkins instruct the carpenters, or any of them, on said day to build such staging? Answer. Yes.

"Question No. 6. If you answer either question 4 or 5 in the affirmative, then did the defendant Perkins by what he said undertake to become responsible for the safe building of such staging? Answer. Yes.

"Question No. 7. At the time the staging in question was built was there any general custom in this vicinity among contractors and their employes that the contractor should not only furnish a sufficient amount of good material for stagings, but should also be responsible for the building of the staging in a safe manner? Answer. Yes."

The main question to be determined on this appeal is whether as a matter of law, upon the evidence in the case and the facts found specially by the jury, the verdict in favor of plaintiff should be sustained. The rule, as we understand it, is that a scaffold is ordinarily a mere incident or detail to the construction of a building, and, unless the master has assumed the responsibility of furnishing such scaffold or staging, but intrusts the making of it to

the servants, he is not liable for an injury caused ¦to the workmen by reason of a defective scaffold or staging. If, however, the master undertakes to furnish the scaffold or staging as a complete structure, he is responsible for his neglect to make it safe. In the case at bar, there is some evidence that the defendants undertook to furnish the staging or scaffold on which plaintiff was injured, and assumed the responsibility of its construction.

Henry Bacon, one of the masons working on the building, testified that the defendant Perkins told him to stay on the wall, and he, Perkins, would look after the scaffold, and Perkins and the carpenters built it, or Perkins was there to see that the carpenters built it. There is evidence that plaintiff told defendant Perkins that they would soon be ready for another scaffold, and he Perkins, had better have a scaffold built on the east end of the building. Perkins directed the carpenters to build the scaffold, and, when plaintiff and the other mason got ready to use it, they found it constructed and ready for use. It is true that the plaintiff and Bacon, the other mason, and their helper, moved a beam and braced the scaffold somewhat, but did not in any way change the portlock that gave way, or the boards resting thereon. The jury have found in favor of the plaintiff in a general verdict, and have found in answer to the special questions that the defendant Perkins told the plaintiff or Bacon the day that plaintiff was injured that he, Perkins, would see to having such staging built, that Perkins instructed the carpenters on said day to build the staging, and that defendant Perkins, by what he said, undertook to become responsible for the safe building of such staging. The defendants having moved for a new trial and for judgment notwithstanding the verdict on the grounds, among others, of the insufficiency of the evidence to justify the verdict and the trial court having denied such motion, if the verdict is supported by substantial evidence, then it must stand. Taylor v. Jones, 3 N. D. 235, 55 N. W. 593; Black v. Walker, 7 N. D. 414, 75 N. W. 787; Muri v. White, 8 N. D. 58, 76 N. W. 503; Howland v. Ink, 8 N. D. 63, 76 N. W. 992; Becker v. Duncan, 8 N. D. 600, 80 N. W. 762; Heyrock v. McKenzie, 8 N. D. 601, 80 N. W. 762; Magnusson v. Linwell, 9 N. D. 157, 82 N. W. 743; Flath v. Casselman, 10 N. D. 419, 87 N. W. 988; Drinkall v. Movius State Bank, 11 N. D. 10, 88 N. W. 724, 57 L. R. A. 341, 95 Am. St. Rep. 693.

Under the doctrine laid down by this court in the cases herein cited, there is substantial evidence to support the verdict, and the learned trial court did not abuse his discretion in denying the motion for a new trial or for judgment notwithstanding the verdict on the ground of the insufficiency of the. evidence.   See cases hereinbefore cited.   The· rule as to the duty of a master in respect to providing a safe place to work is not applicable to a case where a servant is injured by reason of defects in, or insufficiency of a, temporary structure, such as a scaffolding or framework for supporting heavy materials, which are appliances or instrumentalities by means of which the work is done.   When by the express or implied contract between the master and servants, the former undertakes to furnish the necessary tools or appliances, it is his duty to use ordinary care to see to it that such instrumentalities are safe and suitable, and this duty, when it exists, is one of the absolute or personal duties.   Any servant to whom the master delegates it is pro hac vice, a vice principal, for whose negligence the master is responsible.   Phœnix Bridge Co. v. Castleberry, 131 Fed. 175, 65 C. C. A. 481; Hutton v. Holdrook (C.C.) 139 Fed. 734; Chambers v. Am. Tin Plate Co., 129 Fed. 561; 64 C. C. A. 129; Kelley v. Union Pac. R. R. Co., 58 Kan. 161, 48 Pac. 843; Coughtry. v. Mill Co., 56 N. Y. 124, 15 Am. Rep. 387; Cadden v. Am. Steel Barge Co., 88 Wis. 409, 60 N. W. 800; McNamara v. MacDonough, 102 Cal. 575, 36 Pac. 941; Donnelly v. Booth Bros., 90 Me. 110, 37 Atl. 874; White v. Perry , 190 Mass. 99, 76 N. E. 512; Brown v. Gilchrist, 80 Mich. 56, 45 N. W. 82, 20 Am. St. Rep. 496; Kansas City Car Co. v. Sawyer, 7 Kan. App, 146, 53 Pac. 90; Arkerson v. Dennison, 117 Mass. 407; Ch. & A. R. Co. v. Scanlan, 170 Ill. 106, 48 N. E. 826; Ch. & A. R. Co. v. Maroney, 170 Ill. 520, 48 N. E. 953, 62 Am. St. Rep. 396; Edw. Hines L. Co. v Ligas, 172 Ill. 315, 50 N. E. 225, 64 Am. St. Rep. 38.

In White v. Perry, supra, the court says: "It was competent for the jury to find that the platform, though temporary in its nature, was an appliance provided by the defendant, through its superintendent, for the use of the men who were engaged in loading the cars with rails.   And the question whether  he exercised due care in making it as he did, or whether it should have been fastened together, was for the jury.".   In this case plaintiff was assisting in loading a car with  rails, and while standing on a platform made of sleepers was in the act of pushing a rail over the side

of the car, when in consequence, as he contended, of the slipping of one of the sleepers, his foot went down, and the rail crushed his wrist against the side of the car, and broke it.

In Chambers v. Am. Tin Plate Co., supra, the defendant was erecting for its own use a large brick mill. It supplied the material and hired masons and carpenters by the day, and the work was carried on under the general direction of a superintendent. A scaffolding was constructed out of material furnished by the defendants for the use of the masons in the prosecution of their work. This scaffold fell while the plaintiff was standing thereon, engaged in laying brick. The court says: "There was evidence, therefore, from which the jury might reasonably infer that the defendants undertook to furnish all necessary scaffolding, and that they had, in fact, supplied a completed structure for the use of the plaintiff and his fellow masons. Whether we regard a mason's staging as a place to stand and do his work, or as an appliance for the doing of his work is not very important for the purpose of this case. In an obligation to furnish such staging was assumed by the defendants, they were bound to exercise reasonable care to furnish an appliance reasonably safe and suitable for the purpose. * * * When a gang of masons are engaged in plastering or painting a room, the construction of proper platforms or places upon which to stand while doing the work is a detail of business that is generally left to the men themselves. The master may, it is true, take this out of their hands, and assume to do it himself, and in that case he would be bound to furnish an appliance reasonably safe and suitable for the purpose. * * * If an employer undertakes himself to furnish his employes with reasonably suitable and safe appliances, he does not discharge his duty by the employment of an agent to carry out his obligation. For the negligence of that agent he continues responsible."

The cases cited by appellants are not applicable to the facts of this case, and go no farther than to hold where stagings or platforms necessary for the erection of a building were erected by the workmen from materials furnished by the owner of the building, by whom the workmen were employed, the owner is not liable for injury sustained by the workmen from the breaking down of the staging from faulty construction. The rule is that if the master had furnished suitable material and left with the servants generally the duty of preparing their own platforms, and this platform so pre-

pared was defective, that was the negligence of the employes, and the employer would not be liable; while, on the other hand, if the master undertook himself to furnish his employes with reasonably suitable and safe appliances, and he is neglectful in any of these matters, and an employe suffers damage on account thereof, the master is liable. If he engages another to do the work, he is liable for the neglect of that other. It is generally a question of fact for the jury. Where the master undertakes to furnish his employes with reasonably suitable and safe appliances and engages another to do it for him, he is liable for the neglect of that other, which in such a case is not the neglect of a fellow servant, no matter what his position is as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such or which he undertakes to perform. Cases hereinbefore cited.

Our views find support in the recently decided and well-considered case of Allison v. Stivers, 106 Pac. (Kan.) 996. In this case appellant was a contractor engaged in the erection of a roundhouse. The work was conducted under the supervision of a general foreman, and appellee was a carpenter. In the prosecution of the work brick masons and their helpers erected a scaffold for their own use, which was left standing after it had subserved its purpose. Appellee was directed by the foreman to put on some drop siding over a window close by the scaffold, and commenced to build a scaffold of his own to enable him to reach the place. He required a scaffold higher than the one the brick masons had left. He was using a ladder for his purpose when the foreman came along and ordered him to take the ladder down, get upon the old scaffold to nail the necessary timbers, and get the work done. The order was obeyed, and while appellee was driving the second nail the scaffold fell, and he suffered the injury for which he recovered damages. The court said: "This is the ordinary case of a master who provides his employe with an unsafe instrumentality with which to prosecute the work. The brick masons' scaffold took the place of the ladder. In the exercise of his own discretion, appellee chose the ladder as the proper implement with which to build his own scaffold. Acting upon his own initiative, he was bound to know whether the work could be safely accomplished by means of a ladder, and whether the one he himself selected was fit for use. But he was not allowed to proceed according to his own judgment,

select his own materials, supply his own, instrumentalities, and make his own place as the conduct of the enterprise required. The master, through the foreman, interfered, took away the ladder, and gave appellee the brick masons' scaffold instead. Appellee had no discretion in the matter. He did not select or use the scaffold, relying upon the care and prudence of the brick masons in building it. The master selected it, and ordered it to be used just as he might have purchased another ladder, brought it upon the scene, and ordered appellee to substitute it for the one he was using when the foreman appeared. In such a case the duty would rest upon the master to supply a ladder which was reasonably safe, and he would be bound to know whether it was reasonably safe before ordering an employee, ignorant of its condition, to climb upon it. The discharge of his duty would not depend upon who constructed the ladder. Whether made by a manufacturer of ladders, by an ordinary carpenter, or by brick masons or their helpers, the master's duty would be the same. So here. The master took the scaffold as he found it, adopted it as his own, supplied it to appellee, and ordered appellee to use it instead of the ladder. It is immaterial that the scaffold was built by the brick masons, and immaterial that the master did not superintend its erection. He imposed it upon appellee, and was obliged to know whether it was reasonably fit for service. Appellee was no more a fellow servant of the bricklayers, and no more assumed the risk of their work, than he would be a fellow servant with the ladder manufacturer and so would assume the risk in the supposed case."

It is due to counsel for appellants to say that he does not question the accuracy of the foregoing rules of law; his contention being that the facts do not warrant the application of such rules. Appellants contend that the court erred in instructing the jury as follows: "It was the duty of the defendants to use ordinary care to furnish for the plaintiff and his fellow workmen a staging that was reasonably safe for the purpose for which it was intended and used; and if you find that the defendants negligently failed to perform this duty and furnished a staging that was unsafe, and that the plaintiff while in the exercise of ordinary care and without negligence upon his part, and without knowledge of the unsafe condition of the staging, went upon the same to perform his work in the ordinary way, and by reason of the defect therein, if any, fell to the ground and was injured, then plaintiff is entitled to recover." This instruction is undoubtedly erroneous, as it assumes as a fact

that the employers were under a legal duty to furnish the scaf-fold as a completed structure. Whether they were under such legal duty depended upon the question whether they had undertaken or assumed to discharge such duty, and this, in turn, depended upon a disputed fact in the case.

In view of the fact that the jury found that the defendants instructed the carpenters to build the staging, and that they under·took to become responsible for the safe building of such staging, we cannot see that such erroneous instruction was prejudicial to the defendants, particularly as the court, in submitting the questions to the jury, instructed as follows: "In answering the questions I have put to you, numbered from 1 to 7, you are wholly to disregard the law I have laid down to you to the effect that it was the duty of Bailes & Perkins to use ordinary care to furnish a reasonably safe staging for plaintiff to work.on, and you must consider the evidence bearing on such questions just as though the court had said nothing to you about the duties of the defendants in this regard under the law."

The other errors assigned by the defendants have either been abandoned or are not material.

The order and judgment appealed from are affirmed. All concur, except ELLSWORTH, J., dissenting.

ELLSWORTH, J. (dissenting). The district court in its charge to the jury by the instruction quoted at length in the majority opinion and by several others of the same tenor either assumed or direc.ly charged that the scaffold from which plaintiff fell was "a place to work," which it was, from the nature of the employment, the duty of defendants to furnish and keep in reasonably safe condition. This instruction, wherever given or implied, is now conceded to have been erroneous and a misstatement of the law appliacable to this case. After the charge, complete in all particulars even to the direction of a form of verdict, was delivered, the court by an apparent, afterthought submitted seven special findings, and directed the jury that, in making these findings, it should wholly "disregard the law as I have laid it down to you to the effect that it was the duty of Bailes & Perkins to use ordinary care to furnish a reasonably safe staging for plaintiff to work on and you must consider the evidence bearing on such questions just as though the court had said nothing to you about the duties of the defendants in this regard under the law." The jury thereupon returned a general verdict in

favor of plaintiff assessing his damage in the sum of $2,500, and at the same time returned a special verdict consisting of the questions submitted to it by the court answered in such a way as to find as a fact that defendants by special agreement assumed the responsibility of furnishing a scaffold in safe condition for plaintiff to work upon. Upon receiving these verdicts, the court rendered judgment in favor of plaintiff for $2,500.

It seems clearly apparent that the general verdict, being unquestionably based wholly upon an erroneous instruction, is void throughout. The special verdict, assuming that the jury as directed disregarded that part of the charge bearing on defendants' duty with reference to the scaffold, was rendered without any definite instruction whatever on the law points applicable to this feature of the case. There was no special finding as to the amount of damage. The judgment rendered must, therefore, have been either based wholly upon the general verdict or the data necessary for its rendition obtained by piecing together the special findings with reference to the assumption of liability by defendants and the amount of damage which appears only in the general verdict. I do not see how a judgment thus based either upon a general verdict that is admittedly void or partially upon it and on a special verdict which is entirely insufficient in an important particular can be sustained.

Further than this, the charge as given was so confusing that by fair presumption the jury were misled by it. The principles upon which it was directed to find its general verdict are first set out in such detail that any jury might reasonably assume that its first consideration should be applied to this particular. But in agreeing upon its general verdict it was required to accept as matter of law the very facts which it was directed to find in its special verdict. Proceeding in this order the minds of the jury would be fully made up on the questions submitted by the special verdict before the consideration of the same was properly reached. A charge so bewildering and so liable to mislead should, I think, be regarded as necessarily prejudicial to the interests of defendants; and I believe requires a reversal of the judgment and a new trial of the case. (125 N. W. 891.