# SWANSON v. SCHMIDT-GULACK ELEVATOR COMPANY.

(135 N. W. 207.)

**Independent contractors — who are.**

1. Contract of employment between defendant and a third party construed with the evidence of performance of the work covered thereby and *held* not to constitute such third party an independent contractor.

---

Note.—All phases of the question as to what persons are deemed to be independent contractors within the meaning of the rule relieving the employer from liability are discussed, with a full review of the authorities, in a note in 65 L.R.A. 445, including the question of the effect of the employer's reservation of full or limited power of control over the work.

As to liability of employer for acts of independent contractor where the work is done according to plans or methods prescribed by the employer, see note in 65 L.R.A. 755.

And as to employer's liability where his own active interference with the work is the proximate cause of the injury, see note in 66 L.R.A. 950.

For the question of vice principalship considered with reference to the rank of a superior servant, see note in 51 L.R.A. 513. And for vice principalship determined with reference to the character of the act causing the injury, see note in 54 L.R.A. 37.

As to when scaffold builders are vice principals, see note in 75 Am. St. Rep. 631. And for the question of duty of master as to condition of scaffold constructed by employees, to employee not a member of the gang for whose use the scaffold was primarily constructed, see note in 22 L.R.A. (N.S.) 952.

As to the general question of master's duty to furnish safe appliances as affected by the fact that defective appliances are prepared by fellow servants, see note in 4 L.R.A. (N.S.) 220.

On the question of servant's assumption of risk from changing condition of working place during the progress of the work, see note in 19 L.R.A. (N.S.) 340.

A case very similar in principle to SWANSON v. SCHMIDT-GULACK ELEVATOR Co. is that of Hoveland v. National Blower Works, 134 Wis. 342, 14 L.R.A. (N.S.) 1254, 114 N. W. 795, where it is held that a master does not comply with his duty to furnish suitable materials for a scaffold to be erected by his servants for their own use, so as to relieve him from liability for injury to a servant by its fall, where he directs the selection to be made from piles of rotten, second-hand lumber, some of the pieces of which contain auger holes, and forbids the use therefor of new lumber which is at hand.

And another case in which the master was held liable because he furnished to the servants improper materials for the construction of a scaffold is that of Donahue v. Buck, 197 Mass. 550, 18 L.R.A. (N.S.) 476, 83 N. E. 1090.

**Master and servant — existence of relation — independent contractors.**

2. Evidence held sufficient to establish relation of master and servant to exist as between defendant and plaintiff.

**Master and servant — fall of scaffold — construction under direction of vice principal.**

3. Where defendant's managing officer assumed to direct the method and scheme of construction of supports to a scaffold or platform necessarily to be used in the work, and forbade the use of another kind of support about to be used for such scaffold, supplanting thereby the judgment of servants by his own in such respect, he is bound to know that the platform is supported in a reasonably safe manner for employees working thereon; and the negligence of such officer, a vice principal of defendant, is the negligence of the defendant for which it is liable in damages.

**Master and servant — fall of scaffold — defective design selected by master.**

4. Where a design of scaffolding is thus by the master imposed upon employees for their use, the same duty rests upon the master to know that the design is a safe one as rests upon the master to furnish suitable and not defective material for the employees' use.

**Appeal — assignments of error.**

5. Assignments of error as to admission of expert testimony and court's instructions to jury examined.

Opinion filed January 30, 1912. Rehearing denied March 5, 1912.

Appeal from the District Court of McHenry county; *Burr, J.* Affirmed.

*Palda, Aaker, & Greene,* for appellant.

*F. B. Lambert,* for respondent.

Goss, J. Recovery is sought of the defendant company for damages alleged as resulting to plaintiff from injuries received by him while an alleged employee of defendant, engaged on July 15, 1907, in the construction of an elevator at Ruso, in Ward county. The injuries were caused by a platform giving way and precipitating him from the top of the elevator 45 feet downward, inflicting upon him serious and probably permanent injuries, for which a jury has awarded plaintiff damages in the sum of $8,000.

(1) In whose employ was plaintiff?

Defendant company had a contract with one Clark under which it

claims Clark was constructing the elevator as an independent contractor. Plaintiff contends the insufficiency of the contract to constitute Clark an independent contractor, and that under the evidence, though the plaintiff was employed by Clark, he was at all times an employee of the defendant company; that whatever Clark did was subject to the order and approval of one Abline, on the job, the vice president of and alleged managing officer in this construction work of the defendant. This issue of fact was submitted to the jury, who found adversely to the defendant.

(2) Of what does the negligence consist?

The charge of negligence is founded upon the theory that the defendant by its officer Abline directed the manner of erection of the platform used upon which the workmen were suspended while building the walls of the elevator and the six bins into which it was partitioned, and that such platform was faulty in design in that it was inherently unsafe for such use; that Abline, as an officer of the company, directed and dictated its use, and refused to permit, because of added expense, the use of a different platform being constructed by Clark for use, which was supplanted by the unsafe one so used at the order of and under the immediate supervision of said vice president of the defendant company as its supervising and directing construction representative on work. The testimony under this claim will be reviewed.

We will first discuss the testimony as to the employment of Clark, and determine defendant's responsibility or want thereof for any negligence imputable to it. The contract between the elevator company and Clark, coupled with the acts of its vice president apparent from the evidence, fix the legal relationship of the parties as to the question of employment. The contract in question reads as follows:

"This agreement, made and entered into this 21 day of June, A. D. 1907, by and between Schmidt-Gulack Elevator Company, a corporation of Anamoose, McHenry county, party of the first part, and A. J. Clark of Minneapolis, Minnesota, Contractor, party of the second part,

"Witnesseth, that the said party of the second part agrees to furnish all heavy tools such as cross-cut saws, picks, shovels, hoisting rope, together with plans and specifications and men, and to superintend in person the construction of a grain elevator for Schmidt-Gulack Elevator

Company at Ruso, McLean County, North Dakota, as per plans and specifications hereto attached.

"The party of the first part agrees to furnish all the material and pay for the same, together with amounts equal to freight on same, and satisfy all labor bills. Said party of the first part agrees to order all material at once, and to ship and rush same to point of building.

"The party of the first part further agrees to pay to A. J. Clark, party of the second part, in consideration of his services as aforesaid, the sum of two hundred dollars ($200) lawful money of the United States, upon the completion of the aforesaid elevator.

"It is understood that the said A. J. Clark shall not be held responsible for any loss or delay on account of strikes or unavoidable accidents, or by such occurrences as are usually termed acts of God."

It will be noticed that this contract is vague and indefinite as to the payment of labor bills. Clark does not agree to build the elevator, but instead to furnish the necessary tools, plans, specifications, and men, and to superintend the construction of the elevator for a consideration of $200, to be paid him upon its completion, in accordance with certain plans and specifications. He obligates himself principally to furnish the men and to superintend the job. The elevator company contracts to "furnish all the material and pay for the same, together with amounts equal to freight on same, and satisfy all labor bills; to order all material at once, and to ship and rush same to point of building," and pay Clark $200 on the completion of his work agreed upon. This is the contract. By its terms defendant company pays the freight and the wages, and produces the material on the ground. The purpose of this contract, being indefinite as to practical particulars, is explained by subsequent evidence during accomplishment of the work to be done thereunder, and which aids materially in arriving at the conclusion as to whether or not Clark occupied the position of an independent contractor in the construction of this elevator so far as the plaintiff is concerned. We recite the evidence on this matter. Plaintiff had worked before as a carpenter upon one elevator, and this during the same summer and in the employ of Clark, who caused him about the first of July to start work on this job at building a driveway and engine room and other work on the ground, while others erected the cribbing to the full height it was at

the time plaintiff received the fall. Plaintiff was directed by Clark to go up on top of the cribbing and start the rafters and roof work. Complying therewith he took the necessary tools, and, after reaching the top, jumped down about 4 feet upon the platform in question, it immediately giving way with him and occasioning his injury. After Clark had engaged him to work upon the building, and he had been working a couple of days, Abline came on the job and remained thereon bossing it. Clark did not know at first what wages plaintiff would be paid, but Abline fixed them at $3.50 per day, and Abline did the paying while plaintiff was working on the building. Besides being vice president of the company, Abline was a stockholder and running an elevator for the company at Anamoose, on a salary as grain buyer. As no grain was coming into his elevator in July, he went to Ruso in the interests of the company. Abline evidently fixed and paid all wages. He had remained there continuously the week before plaintiff was injured, at times bossing, during the course of which he had a dispute with Clark over the work, he claiming Clark was not doing the work right, Clark after that making a change in it. Some of the witnesses testify that Clark was one of the bosses and Abline the other, with Abline on the building most of the time, directing how things should be done. Several witnesses testify to hearing consultations between Abline and Clark in regard to the constructing of the elevator, Abline generally directing particularly the work as to the scaffolding or staging used for the men to stand upon as the building increased in height. The testimony of defendant's officers is that Abline was sent by the company to Ruso to see that this elevator was constructed according to plans and specifications, and that the contract was complied with, and that the company had no one at Ruso representing it in such particulars other than Abline, but denying that he was there to direct Clark how to carry out his contract. The testimony shows Abline gave Clark instructions as to the scaffolding and how it should be built, plaintiff testifying thereto as follows: "This first talk I heard between Abline and Clark arose over the cutting of some braces that I was preparing for the use of the scaffold, for supporting the scaffold. I don't know how long I was engaged at that. I sawed quite a big pile of them. I knew what they were for. I heard him tell Clark that he couldn't use that in making the scaffolding. Abline was bossing. After they had this little talk about the sawing of the timbers, or sawing of those crosspieces, Clark

agreed and followed Abline's instructions. I did not build nor have anything to do with the building of the platform that I fell from. I did not know how it was built nor how it was held up." And again plaintiff testifies: "The first controversy I heard was a couple of days after Abline went there. I was sawing up a lot of braces for staging, corner braces, and they were standing not far from me, and George Abline asked Clark what these were good for, and Clark told him 'this is corner braces for the staging;' and Abline said, 'We are not going to use them, they are too expensive to put in;' and so they were talking for a while, and Clark came over to me and told me to stop cutting them up. Clark told me to quit cutting them up right away after his talk with Abline, and I quit sawing them."

The foregoing is sufficient, in our opinion, to disprove defendant's plea of its nonliability because of its assertion that Clark occupied the position of an independent contractor. It is established that plaintiff was in fact an employee of the defendant, performing his work under and subject to the supervision and control of the defendant company acting through its duly authorized and empowered directing officer for the purpose. At least the testimony is sufficient to sustain the jury's special finding and its finding in the general verdict to that effect under the court's instructions submitting the question as a matter at issue for their determination.

The next question under the second general subdivision as heretofore outlined involves principally the determination from the evidence of the answer to the question: Was the defendant guilty of negligence as pleaded resulting to the injuries of plaintiff complained of? Its answer involves an examination of the evidence as to the negligence asserted with reference in particular to whether an issue is presented on the want of ordinary care in the furnishing of a platform necessary to the work, and whether it was so constructed or designed as to be manifestly unsafe for the purpose to which defendant's managing officer directed its use and to which thereunder it was applied, as a consequence of which plaintiff received his injury. The testimony discloses that the platform was suspended some 40 feet above the bottom of the bin or shaft solely by means of four two by fours stuck through the walls of the shaft, unfastened in the walls and projecting out into the shaft far enough to run beneath, and hold thus suspended the platform upon which the men worked with their tools and material. The

safety of the men depended solely upon these pieces of scantling not slipping through the walls or from under the platform or breaking under the weight which they necessarily bore. The evidence shows that necessarily every few feet from the ground upward the platform had been raised to a higher level as the work progressed, and placed upon such supports until this height had been reached. That it was built by other workmen. Plaintiff was ordered to go to the top, and his work necessarily caused him to depend for his safety upon the stability of the platform as constructed by others, and when he fell it was the first time he had been upon this platform. On arrival at the top of the structure he had jumped down upon the platform, preparatory to beginning the roofing of the structure. Another laborer was upon the platform at the time. He had every reason to believe it secure and safe. He did not know particularly how it was supported. Defendant's vice president had put in vogue the system or design under which it was built, and had prevented another manner of supporting the platform from being used. It was for another platform construction that the braces described by plaintiff and which he desisted from sawing and Clark refrained from using were to be applied, after the prevention of which the construction or method of supporting the platform by sticking two by fours through the surrounding walls, as above described, was adopted under Abline's orders.

When plaintiff alighted on the platform it immediately gave way because its supports broke under the platform supported. One of the witnesses testifies that, immediately after the fall, he observed one of the supporting two by fours broken off close to the wall through which it was sticking, and that it was broken off through a knot therein nearly the size of the two by four. In this connection the jury have found in the special findings submitted that whoever built the platform was not ordered specially by defendant to build it for the use of the plaintiff, and that it was built by one not a fellow servant of plaintiff. This last proposition, one of law, should have been answered to the contrary of the findings of the jury in such respect. It further appears that whoever built the platform was not allowed the free exercise of his own discretion in the manner of its construction, but instead worked under the direction of Abline; as is further shown by the testimony of witness Peter Johnson, that he worked on this elevator; that Clark was

.one boss and Abline the other; that he was there when plaintiff was hurt; that the platforms used were all alike; that though he did not ·work in the bin in which plaintiff fell, witness testifies that Abline and 'Clark were talking to each other, but he didn't hear particularly what ·was said in regard to the construction of the elevator, and gives the following testimony:

Q. Do you know of anybody on that job directing how the elevator ·was to be constructed except Mr. Clark?

A. Yes, Abline was up there on the building most of the time.

Q. Was he directing how things should be done?

A. Yes.

And again witness J. B. Johnson testifies to working in the bin adjoining the one in question; and, as to the scaffolding in the bin from which plaintiff fell, gives the following testimony by question and answer:

Q. Now, did you put in any of these two by fours to hold up the scaffold?

A. I might have put in these two north ones.

Q. You were accustomed to put in the two by fours used for braces which extended into the bin in which you were working, were you?

A. Yes, as a rule I did after this fellow come to work in there, because he wasn't very fast; I generally put in his and mine. I don't know who put the braces in that platform in the bin where Oscar Swanson was at the time of the fall; I knew they were in and they were about as I have stated.

Q. Whenever you put in any of these two by fours to act as supports for this scaffolding or staging, under whose direction did you do that?

A. Under George Abline.

This, in addition to the testimony recited elsewhere in this opinion, is sufficient to carry to the jury for their determination the question ·of whether this platform, as constructed, was used because Abline required it in lieu of the construction and design of platform that Clark started to install, and which would have had for supports braces across the four corners of each bin, a construction shown by the evidence to be the safe kind for this class of work. Under the testimony the reasons for its abandonment given by Abline himself was that the corner

braces for the staging were too expensive to put in. So much for the evidence.

The legal principles applying to the facts then are reduced to the following proposition. If Abline was a vice principal of the defendant company and was negligent in the selection of the design and kind of construction and the supports thereto chosen by him for the use of his employees who were under his orders of supervision to work thereon, one of which was the plaintiff, who, because of such negligence of Abline and as the approximate and direct result thereof, received the injuries complained of, the company is liable in damages for such injuries so occasioned, Abline's negligence being that of the company. And under those circumstances it was immaterial whether a fellow servant, in the erecting or putting in place of the platform from which defendant fell, was guilty of negligence, as the negligence of the fellow servant, though perhaps contributing directly to the injuries, did not exonerate the master, this defendant, from liability. Had the platform erected not been dictated in design and manner of construction by Abline, but instead Clark or the servants under him been left free to follow their own discretion in its selection, it would have been otherwise. But under the evidence upon which the jury's verdict must have been based, Abline was bound to use ordinary care to ascertain that the design of construction instituted for use by him, to the exclusion of another one, was a reasonably safe platform under the circumstances and for the use to which it was so directed to be put; and a default on his part in this respect is negligence sufficient upon which to base this verdict so far as that one question is concerned. 26 Cyc. 1153, from which we quote: "If a master directs a servant to do certain work in a manner not reasonably safe, and the performance of the work in the manner directed is the proximate cause of injury to the servant, the master is guilty of actionable negligence." And again from 26 Cyc. 1115, we quote: "Where a master furnishes or causes to be built under his direction and control a platform, scaffold, staging, or like structure for the use of his servants in the prosecution of their work, it is his duty to exercise ordinary care to see that it is reasonably safe for the purpose contemplated."

Defendant's liability can only be based upon the theory of a defective appliance having been furnished plaintiff. We have examined

the authorities under plaintiff's claim of right to recover under the principles applying to the duty of the master to furnish the employee with a safe place in which to work, and are satisfied no recovery can be sustained upon "the safe place" theory. Grant that this platform was built by others, and that it was not again to be moved to a higher level; that the elevator and bins for the erection of which it had been constructed and moved upward as the work progressed was completed; that plaintiff had no occasion to investigate its construction prior to being ordered thereon; that he ascended to said platform for the purpose of and was about to begin a different kind of carpenter work, that of roofing the structure, for the performance of which this platform upon which to work was necessary; nevertheless the fact remains that this platform was built as a part of work of constantly changing conditions as it progressed, the risks of which are ordinarily assumed by the servant unless, as is said in McCone v. Gallagher, 16 App. Div. 272, 44 N. Y. Supp. 697, at page 702, "the master assumed to construct the scaffold, and then directed the employees to use it as a constructed scaffold." See Citrone v. O'Rourke Engineering Constr. Co. 188 N. Y. 339, 19 L.R.A.(N.S.) 340, 80 N. E. 1092, and particularly the valuable L.R.A. note from pages 340 to 369, and cases therein cited; Cheatham v. Hogan, 50 Wash. 465, 97 Pac. 499, and also reported with valuable note thereon in 22 L.R.A.(N.S.) 951, and exhaustive note to 54 L.R.A. 33, on page 110.

If plaintiff can recover he must predicate it upon negligence based upon defendant by its vice principal, Abline, having dictated the use of the platform supported as he directed it, and in a manner other than it would have been built or supported but for such interference, and the further proof that its use as constructed was negligence. Lang v. Bailes, 19 N. D. 582, 125 N. W. 891; Hoveland v. National Blower Works, 134 Wis. 342, 14 L.R.A.(N.S.) 1254, 114 N. W. 795; Donahue v. Buck, 197 Mass. 550, 18 L.R.A.(N.S.) 476, 83 N. E. 1090.

But counsel for defendant undoubtedly will assert in line with his brief that Abline was not a vice principal of the defendant company. The evidence establishes his presence therein with the authority of the defendant, empowered to see that the construction of the elevator and its completion was in accordance with plans and specifications between the company and Clark. He handled the money, and was at least con-

sulted in fixing wages, was vice president of the company, and assumed to act for it throughout the work. While aware of the rule that the actual and not apparent authority given the officer is usually controlling in this case, we conclude the proof is sufficient of actual authority in Abline to represent the company as he did.

He did not act as an ordinary workman or foreman. His was the mind that controlled the manner of performance of any duty owing by defendant as master to the plaintiff as employee. And did defendant owe plaintiff any duty, and can plaintiff look beyond the so-called contractor? If defendant had trusted to such contractor, and not placed a superior over him, this question would have been answered by the determination of whether Clark was or was not an independent contractor. But since defendant has assumed direction, thereby assuming the duties of master, the question is answered and the defendant is liable for violation of the nondelegable duty assumed by it. Clearly Abline was a vice principal under Lang v. Bailes, 19 N. D. 582, 125 N. W. 891, and cases cited. Having assumed this burden, it owed the plaintiff the obligation to furnish suitable materials for the construction of a suitable scaffold or platform upon which to work. Defendant may answer that it has furnished such materials in plenty. Granting this to be the fact, we reply that we see no distinction in principle between the furnishing of improper materials for use and the furnishing of suitable materials but ordered to be used in an unsafe or dangerous manner. See Richards v. Hayes, 17 App. Div. 422, 45 N. Y. Supp. 234. We quote therefrom: "If this plaintiff and his coemployees had, without specific instruction from the master or one acting for the master, and under his authority in the performance of the duty which he owed to his employees, constructed this scaffold of improper material, it would undoubtedly be a case where the negligence was that of a fellow employee or coservant with the plaintiff, for which the master would not be liable. Where, however, there were furnished to the plaintiff and his coemployees materials with which to construct this scaffold, which were not proper for the purpose and which made the scaffold when constructed an unsafe and improper appliance for the doing of the work, then it seems . . . that if the master employed a person to act in his place to furnish such material the negligence of such person so appointed to act for the master in the discharge of the duty which he owed to his em-

ployees was the negligence of the master, for which the master was responsible. . . . The difficulty that has arisen has been in determining whether, in a particular case, the duty that the foreman or representative of the master had undertaken to perform was a duty which the master owed to his servants or employees, or a duty that the employees were to perform for the master; and so far as I know in every case where it appeared that the foreman or one appointed by the master to represent him attempted to perform a duty that the master owed to his servant, and was negligent in such performance, the master was held liable." And then again: "And I can see no reason why this act of the defendant's foreman in assuming to discharge the duty that it owed to the plaintiff was not an act for which the master was responsible, and which in an essential particular failed in the performance of the duty the master owed to the plaintiff and for which the master was responsible," that of using material to and in creating an unsafe scaffold, instead of furnishing suitable material for such use in circumstances practically parallel with the case on trial. This case recognizes the nonliability of the master for the negligence of the fellow servant, citing McCone v. Gallagher, 16 App. Div. 272, 44 N. Y. Supp. 697, where the duty of the master has been performed by the furnishing of suitable materials for the work where the details of construction are left to the servant. But where the method of construction is dictated in a certain way, instead of the furnishing of materials, the defendant is held liable. And, as before stated, we see no distinction in principle between the failure to furnish suitable materials, as a duty imposed by law, and the failure to furnish a reasonably safe appliance or scaffold when the method of its construction is dictated to the exclusion of another reasonably safe one, that would otherwise have been used. Under the evidence plaintiff had the right to rely upon the presumption that the platform so furnished by defendant was a reasonably safe instrumentality. Kehoe v. Allen, 92 Mich. 464, 31 Am. St. Rep. 608, 52 N. W. 740; Lang v. Bailes, 19 N. D. 582, 125 N. W. 891; Allison v. Stivers, 81 Kan. 713, 106 Pac. 996. The evidence was sufficient under the authorities to require the submission of this question to the jury.

Supporting proof of negligence is expert testimony to the effect that the platform so supported constituted an unsafe place upon which to work, and that a platform supported by corner-brace supports was a

safe construction. While defendant insists that the evidence is indefinite as to the kind of a construction that would have been adopted had not the one used been installed at Abline's order, the one used was designed and used under its direction. It is undisputed that a change was made as to platform supports and at Abline's order.

We conclude then, that the evidence is sufficient to sustain the finding of the jury that Abline was in command of the work pursuant to indefinite instructions from the company for whose interests he was acting; and that in his superseding the discretion of all others as to the supports for the platform in question, defendant company became thereby the master in the furnishing of this instrumentality upon which to work, one manifestly unsafe and dangerous as supported and as it existed when plaintiff, in obedience to directions he was bound to obey in the performance of his duties, went thereon to his injury.

We will now consider the error assigned in the admission of proof of these conditions and the court's instructions given the jury. In passing upon this case we have considered the exhibit A, contained in respondent's additional abstract as a part of the statement of the case, as finally settled, the same having been by inadvertence omitted from the original statement as settled, and thereafter by order of the trial court made a part of the statement proper.

The first four assignments of error are based upon an assumption that the testimony excepted to was given in reference to the wrong exhibit A. Two exhibits were so marked, one coming into the case as exhibit A attached to the deposition of the witness Johnson, and the other being an exhibit so marked on the trial; and counsel has assumed the exhibit A referred to by the witness Johnson to have been the exhibit so identified on the trial, instead of the exhibit the part of Johnson's testimony and drawn by him. This exhibit A of Johnson's testimony is brought into the record by respondent's additional abstract. When the testimony of Johnson is read in connection with the exhibit prepared by him and to which he was referring, it is clear the assignments are without merit. The assignments of error urged to the testimony offered by witnesses Farnsworth, Stromswold, and McGulpin, contractors who testified as experts on the question of safety of the platform used and from which plaintiff fell, are not above criticism. But considered as they must have been by the jury, in connection with all

their testimony and the fact that they were testifying as to the construction of grain elevators, we deem the error, if any, insufficient to warrant a reversal. Not all conditions disclosed in evidence need be embodied in the hypothetical question, and considerable latitude must be given the trial court in rulings concerning the admission of this class of testimony.

This brings us to the court's instructions, to practically all of which the defendant has assigned error. To discuss separately each assignment of the fifteen so taken would needlessly prolong this opinion. On the whole we deem them sufficient.

The jury made special findings as answers to six questions submitted them by the court, in addition to their general verdict found, and it is urged that certain of them are inconsistent with the general verdict and with each other. To this we cannot agree. Some of them concern matters not in issue and to which the court could have instructed answers as found, but that could not result to defendant's prejudice. And this decision on the merits is decisive of the error assigned on the overruling of defendant's motions for directed verdicts and judgment notwithstanding the verdict. The judgment appealed from is ordered affirmed, with costs.