---

SCANLAN v. CITY OF WATERTOWN et al.

(Supreme Court, Appellate Division, Fourth Department.  February 9, 1897.)

1. MUNICIPAL CORPORATIONS—DEFECTIVE STREETS—DELEGATION OF DUTY.
    A city cannot absolve itself from its duty to keep its streets in a safe condition for public travel by an attempted delegation of that duty to a third person, who is doing a public work under a contract with it, in which express provision is made for the protection of the public by the contractor.
2. SAME—CONTRIBUTORY NEGLIGENCE—FINDING OF JURY.
    A finding of freedom from contributory negligence will not be disturbed, where, passing over no obstructions, plaintiff attempted to cross an excavation in a public street, believing that a properly guarded bridge was at a point where she had crossed a few days previously, and she met people crossing from the opposite direction, but, on account of insufficient light, could not see on what they crossed, and ties six inches wide had been substituted for the bridge, in consequence of which she fell into the excavation.

Appeal from circuit court, Jefferson county.
Action by Johannah Scanlan against the city of Watertown and others for personal injuries.    From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for new trial, entered on the minutes, defendants appeal.    Affirmed.

The plaintiff brings this action to recover damages for personal injuries which she claims to have sustained by reason of falling into an open sewer which was at the time in process of construction in the city of Watertown.  The work upon this sewer, which extended from the public square into Washington street, was being prosecuted under a contract with the defendants Ryan & Avery, who, in their contract with the city, expressly stipulated that the work should be properly and sufficiently guarded with barriers and lights at all dangerous places, and that "watchmen shall be stationed .at such dangerous places, if required, and such other means taken as will tend to prevent accident or injury to persons or

property in consequence of the work." The plaintiff, in her complaint, alleges that while crossing from the west to the east side of Washington street, at about 8 o'clock on the evening of October 6, 1894, on the sidewalk or crosswalk leading from the Arcade entrance to the Washington Hall Block, she fell into the sewer, which had been excavated to the depth of about 14 feet, by reason of the careless and negligent manner in which the same had been left by the defendants, and without any fault of her own. The defendants answered separately, the city of Watertown denying the allegations of the complaint, and alleging that the work of the sewer was being done under a contract, that it had no power to direct or control the manner or method of its performance, and that the negligence complained of, if any, was that of the contractors, for which it was in no wise responsible. The issues thus joined came on for trial at the Jefferson circuit in May, 1895, and the jury rendered a verdict in favor of the plaintiff, for $2,000. Judgment was subsequently entered, from which, as well as from an order denying the defendants' motion for a new trial upon the minutes, this appeal is brought.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Edward N. Smith, for appellant city of Watertown.

C. H. Walts and D. G. Griffin, for respondent.

ADAMS, J.    The evidence contained in the record tends to prove that Washington street was one of the principal thoroughfares of the city of Watertown; that the sewer, at the point where the accident occurred, had been excavated to the depth of at least 10 feet; and that it was from 8 to 10 feet in width. It was conceded by one of the defendants, when upon the witness stand, that there was no other point along its entire length which presented greater dangers to travelers; and there is no pretense that a watchman had been stationed there to warn people of the dangerous condition of the street. The evidence as to the character and extent of the means adopted to prevent accident was more or less conflicting, so that a clear question of fact respecting the defendants' negligence was raised; and counsel, upon the argument, frankly conceded that, as to that feature of the case, the verdict of the jury was conclusive. The court was advised, with equal candor, that the only grounds relied upon for a reversal of the judgment and order appealed from were (1) the absence of all liability upon the part of this defendant, in any event; (2) the excessive amount of the damages awarded; and (3) the failure of the plaintiff to establish due care and effort upon her part to avoid the danger which confronted her. We will proceed, therefore, to consider these several propositions in the order in which they have been stated.

The contention that the city of Watertown is not liable for the injuries which befell this plaintiff rests upon the assumption that by entering into an independent contract with a third party to construct the sewer, over whose methods and acts it had no control, and from whom it had exacted a stipulation that proper precautions should be taken for the protection of the public, the municipality relieved itself from all further duty or obligation in respect of the matter. Such, undoubtedly, is the general rule. Wood v. City of Watertown, 58 Hun, 298, 11 N. Y. Supp. 864, and cases cited. And it is one which might be invoked in aid of the defendant's con-

tention, were it not for the fact that the circumstances of this case create an exception to the rule. The defendant is a municipal corporation. As such, it rests under an obligation to keep its streets in a proper and safe condition for public travel, and it is bound to exercise a reasonable degree of diligence to accomplish this end. If it obstructs one of its streets, or permits it to get out of repair, it is liable, in the absence of reasonable care, to one who is injured in consequence thereof. And it is settled by an unbroken line of authorities that it cannot absolve itself from this liability by an attempted delegation of its duty to a third party who happens to be prosecuting a public work under a contract with the municipality, in which express provision is made for the protection of the public by the contractor. Storrs v. City of Utica, 17 N. Y. 104; Brusso v. City of Buffalo, 90 N. Y. 679; Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095. See, also, 2 Dill. Mun. Corp. § 790. The learned counsel for the defendant cites the case of Herrington v. Village of Lansingburgh, 110 N. Y. 145, 17 N. E. 728, as an authority in support of the proposition advanced by him. That case, however, was very different in its circumstances from the one in hand. There the plaintiff's team, which was standing in a street crossing the one in which a sewer was being constructed, was frightened by the noise of a blast fired by the contractors in the prosecution of their work, and, while attempting to control his horses, the plaintiff was injured. It was held by a divided court that the defendant was not liable, but, in the prevailing opinion, Earl, J., is very careful to say that:

"At the place where the horses were fastened the street was in perfect condition, and the horses did not become restless or frightened from anything existing in the street; and the accident was in no way caused by any imperfect condition of the street, but simply by the noise resulting from the blast."

It will be seen at a glance that this case has no application to the one now under consideration, and we pass, therefore, to the question of damages, which, it is insisted by the defendant, are excessive in their amount. Considerable evidence was given upon the trial of the case respecting the nature and extent of the plaintiff's injuries, some of which did, perhaps, tend to show that they were not so serious as she claimed them to be, and, in a measure, to justify the charge that she was malingering. But this feature of the case was fully submitted to the jury, who saw and heard the various witnesses; and, in view of the conflicting character of the evidence upon this branch of the case, we do not feel disposed to interfere with their verdict, especially as the damages awarded cannot be deemed excessive if the statements of the plaintiff and her witnesses are to be believed.

The serious question in this case is that presented by the defendant's third proposition, which is, in effect, that in approaching this open sewer the plaintiff was unmindful of the obligation resting upon her to exercise such a degree of care and caution as should be commensurate with the dangers surrounding her. It is a well-established rule of law that a person using a public street is not required to exercise vigilance to discover dangerous obstructions

lying in his path, but may walk or drive, by day or night, relying upon the assumption that the corporation has fulfilled the duty imposed upon it to keep its streets in a safe and proper condition for public travel.    Pettengill v. City of Yonkers, supra.    This rule has no application, however, to cases where a traveler approaches an obstruction with knowledge of its existence and location.    Weston v. City of Troy, 139 N. Y. 281, 34 N. E. 780; Neddo v. Village of Ticonderoga, 77 Hun, 524, 28 N. Y. Supp. 887.    That the plaintiff had notice of the excavation in Washington street is not to be denied, for she had seen it and walked over it but a few days prior to the day she received her injury; but, even if such were not the case, it is quite apparent that the means adopted by the contractors to warn people of the situation were such as must have conveyed some notice to her that the street was not in its normal condition; and therefore, if there were nothing more of the case than that which has just been stated, we should be inclined to hold, as matter of law, that the plaintiff was guilty of contributory negligence, even upon her own narration of the circumstances attending her falling into the sewer.    But, before this question can be properly disposed of, there are other facts and circumstances to be considered, which, in our judgment, tend quite materially to weaken the defendant's position.    It seems that a platform or bridge had been constructed by the contractors to throw across this chasm, upon either side of which there was a hand rail, and at either end of which was a step and guard rail.    When properly adjusted, this bridge connected the crosswalk in such a manner as to afford a perfectly safe and easy means of passage over the sewer.    The plaintiff was aware of the existence of this bridge, and of the purpose for which it was used.    On Wednesday preceding the day of the accident, she had used it to cross from the Arcade to Washington Hall Block.    But, as the work upon the sewer progressed, it became necessary or desirable to remove the bridge, and this was done the following day.    On the evening of the accident (which was Saturday), the plaintiff says, she had not heard of the removal of the bridge, and supposed it was still in the position in which she had last seen it.    There was no sign or notice at the street corner to indicate that any change in the situation had taken place, and, acting upon the assumption that the bridge was still there, she started to cross Washington street, and, in going towards the sewer, met people coming from the opposite direction, who had apparently just crossed the same, as, indeed, one or two testified was the fact; they having walked upon some ties, about six inches in width, which had been thrown over the excavation. The plaintiff testifies that she was looking ahead, intently, to see where she was going; that she supposed the bridge was there, and was looking for it; that it was dark, and, the first thing she knew, she went into the ditch, feet first.    In this statement of the situation, and of the manner of her falling into the sewer, she is corroborated by the witness Clark, who was walking behind her; but just here, and in this connection, it is proper to advert to another circumstance upon which the defendant places great reliance in its

contention that the plaintiff was not free from negligence which contributed to the injury of which she complains. Several of the defendant's witnesses testified that a number of logs or poles, which were some six or eight inches in diameter, and which had been used in blasting, to keep the pieces of rock from flying into the air, were laid upon the Washington street crosswalk, at the close of the day's work on Saturday, and that the plaintiff could not have reached the sewer without climbing over or going around these poles. It is insisted that this, of itself, afforded ample notice of the situation, and that in addition thereto the red and white lights were indications of danger which ought not to have been disregarded. The evidence, as a whole, seems to leave no doubt that there was a red light upon the west, and a white light upon the east, side of the sewer. But this might well have been the case had the bridge remained in position, for there were various obstructions, such as an engine, piles of sand, barrels, planks, and other articles, in the street, aside from the ditch itself, to be guarded against. So that the significance of these lights was, in view of the conditions with which the plaintiff had the right to assume she was surrounded, a matter concerning which different opinions might be entertained. And the evidence relating to the situation of the poles, and the extent of the barrier they presented, is subject to the same criticism. If, as some of the witnesses testified, they extended clear across the walk, and were piled on top of each other, it would be difficult to understand how any person, especially a woman, could get over them without receiving some notice of the purpose for which they were thus placed. The plaintiff testifies, however, that, while there may have been some poles there, she neither climbed over nor turned off the walk to pass around them. but that she walked straight ahead into the ditch, and there was ample corroboration of her testimony in this regard to justify the jury in concluding that she told the truth. Nearly all of the witnesses who gave evidence upon the subject say that the poles were thrown across the walk "promiscuously," and many of them, including some called by the defendant, testified that they did not reach across the entire walk, but that there was a space of two or three feet upon the south side thereof which was not covered or obstructed in any manner by them. These matters were all adverted to by the learned trial justice, who very clearly instructed the jury in regard to their bearing upon the question of contributory negligence. And while the case, so far as this branch of it is concerned, may be regarded as verging upon the border line, we are inclined to think that, upon the whole, it was properly disposed of at the circuit, and that the verdict of the jury should not be disturbed. Our attention has been directed to the recent case of Whalen v. Gaslight Co., 151 N. Y. 70, 45 N. E. 363, which is supposed to vindicate the defendant's contention respecting the question last considered. But a mere statement of the distinctive features of that case is sufficient to distinguish it from the case in hand. There the defendant was engaged in laying a gas pipe across a sidewalk in the city of Brooklyn. For this purpose it had

removed two of the flagstones of the walk, and dug a trench in which to lay its pipe. One of the flagstones which had been removed was laid on top of another, and a space about five feet in width was left between the two openings, over which a traveler could walk in perfect safety. The plaintiff, an old lady, in broad daylight, with nothing to obscure her vision, and with the situation confronting her made perfectly obvious, tripped over the displaced flagstone, and fell, receiving the injuries of which she complained. It was held that in these circumstances she could not recover. The case came directly within the principle laid down in Weston v. City of Troy, supra, which, as we have attempted to show, has no application to the somewhat peculiar circumstances of the present case.

The judgment and order appealed from should be affirmed, with costs. All concur.