## MARY MONTAIN v. CITY OF FARGO, a Corporation.

(L.R.A.1918C, 600, 166 N. W. 416.)

**City — servant of — independent contractor — written contract — to perform services.**

1. One who performs services for a city in the matter of removing garbage under a written contract which contains a provision that he is to furnish teams and men or such number thereof as in the judgment of said city may be necessary, and that the entire work is to be done in a good and substantial manner with the approval and acceptance of the city, and under the supervision and direction of the commissioner of health, and that his teams and equipment shall be acceptable and satisfactory to said health commissioner, is *held* to be an independent contractor, and not a servant of said city.

**City health commissioner — city commission — removal of garbage — supervising the work — public and governmental capacity — not private — or corporate capacity.**

2. A city health commissioner while supervising the removal of garbage, and a city commission while authorizing and providing for its removal, are *held* to have been acting in a public governmental, and not in a private or corporate, capacity.

Opinion filed November 1, 1917.   Rehearing denied November 27, 1917.

Appeal from the District Court of Cass County, *A. T. Cole,* J.

Action to recover for personal injuries.

Order sustaining demurrer to complaint.

Plaintiff appeals.

Affirmed.

Statement of facts by BRUCE, Ch. J.:

This is an appeal from an order sustaining a demurrer to a complaint which in substance alleged that the plaintiff's intestate, one Mons Montain, met his death by being struck by a runaway team drawing a garbage sled, which sled was being used for the purposes and under the conditions intended and detailed in a certain written agreement between the city of Fargo and one Nels Johnson for the collection and disposal of kitchen garbage, and which contained the following provisions:

"Whereas, said Nels Johnson did agree in writing to furnish four teams and eight men or any number of said teams, at the rate of $147 per month for each team, and two men to haul said garbage, during the said year 1915, at the said prices set out in said bid,

"Now, therefore, the said party of the second part covenants and agrees to furnish to said city, at his own cost and expense, not to exceed four teams fully equipped and eight men or any number of said teams and men, at the rate of $147 per month for each team, and two men to perform the work necessary under the provisions of the ordinance commonly known as the 'garbage ordinance,' to the full satisfaction and acceptance of the said city, and to perform not less than ten hours' work each day.

"The entire work to be done in a good and substantial manner, with the approval and acceptance of the city, and under the supervision and direction of the commissioner of health, of such agent or agents as he may appoint for that purpose. Such teams and equipment and men to be acceptable and satisfactory to said health commissioner. The said city reserving the right to cancel this agreement upon ten days' notice if the said second party fails to comply in all respects with the terms and conditions of this contract and the provisions of the ordinance heretofore referred to."

38 N. D.—28.

*Pfeffer & Pfeffer,* for appellant.

The written agreement between the parties created the relationship of master and servant. Comp. Laws 1913, § 6134; Hedge v. Williams, 131 Cal. 455, 82 Am. St. Rep. 366, 63 Pac. 721, 64 Pac. 106.

The test is that, if the performance of the work is controlled by the employer, the employee is a servant; but if it is controlled by the employee he is an independent contractor. Messmer v. Bell & C. Co. 133 Ky. 19, 117 S. W. 346, 19 Ann. Cas. 1; Madisonville, H. & E. R. Co. v. Owen, 147 Ky. 1, 143 S. W. 421; Mason & H. Co. v. Highland, — Ky. —, 116 S. W. 320.

Where the owner retains the right to direct the manner of carrying out the details of the work, the contractor is not independent. Majors v. Connor, 162 Cal. 131, 121 Pac. 371; Perkins v. Blauth, 163 Cal. 782, 127 Pac. 50; Madisonville, H. & E. R. Co. v. Owen, 147 Ky. 1, 143 S. W. 421; Quayle v. Sewerage & Water Board, 131 La. 26, 58 So. 1021; Cunningham v. Penn Bridge Co. 131 La. 196, 59 So. 119; McCarthy v. Clark, 115 Md. 454, 81 Atl. 12; Beal v. Champion Fiber Co. 154 N. C. 147, 69 S. E. 834; Harmon v. Ferguson Contracting Co. 159 N. C. 22, 74 S. E. 632; Chas. T. Derr Constr. Co. v. Gelruth, 29 Okla. 538, 120 Pac. 253; Moore v. Koplin, — Tex. Civ. App. —, 135 S. W. 1033; James v. Pearson, 64 Wash. 263, 116 Pac. 852; Nelson v. American Cement Plaster Co. 84 Kan. 797, 115 Pac. 578; Johnson v. Carolina, C. & O. R. Co. 157 N. C. 382, 72 S. E. 1057; Swanson v. Schmidt-Gulack Elevator Co. 22 N. D. 563, 135 N. W. 207; Solberg v. Schlosser, 20 N. D. 307, 30 L.R.A.(N.S.) 1111, 127 N. W. 91.

The right to control the work to be done under the contract is the most important test in determining whether the employee is a servant or an independent contractor. Singer Mfg. Co. v. Rahn, 132 U. S. 518, 33 L. ed. 440, 10 Sup. Ct. Rep. 175; Sacchi v. Bayside Lumber Co. 13 Cal. App. 72, 108 Pac. 885; Atlantic Transport Co. v. Coneys, 28 C. C. A. 388, 51 U. S. App. 570, 82 Fed. 177; Campbell v. Lunsford, 83 Ala. 512, 3 So. 522, 13 Am. Neg. Cas. 164; Giacomini v. Pacific Lumber Co. 5 Cal. App. 218, 89 Pac. 1059; Linnehan v. Rollins, 137 Mass. 123, 50 Am. Rep. 287; DePalma v. Weinman, 15 N. M. 68, 24 L.R.A. (N.S.) 423, 103 Pac. 782; Potter v. Seymour, 4 Bosw. 140; Goldman v. Mason, 18 N. Y. S. R. 376, 2 N. Y. Supp. 337; Hawke v. Brown, 28 App. Div. 37, 50 N. Y. Supp. 1032; Baldwin v. Abraham, 171

N. Y. 677, 64 N. E. 1118; Pickens v. Diecker, 21 Ohio St. 212, 8 Am. Rep. 55; Smith v. Humphreyville, 47 Tex. Civ. App. 140, 104 S. W. 495; Kniceley v. West Virginia Midland R. Co. 64 W. Va. 278, 17 L.R.A.(N.S.) 370, 61 S. E. 811; Lacour v. New York, 3 Duer, 406; New Orleans M. & C. R. Co. v. Hanning, 15 Wall. 649, 21 L. ed. 220; Jensen v. Barbour, 15 Mont. 582, 39 Pac. 906.

Where the work is to be done "under the direction of a street commissioner," the employer retains control and the employee is a mere servant. St. Paul v. Seitz, 3 Minn. 297, Gil. 205, 74 Am. Dec. 753.

Also where the work is directed by a "superintendent" of employees. De Palma v. Weinman, 15 N. M. 68; 24 L.R.A.(N.S.) 423, 103 Pac. 782; Cincinnati v. Stone, 5 Ohio St. 38.

A master is liable for the negligent act of his servant when the negligent act occurred while the servant was performing services within the scope of his employment and in the line of his duties while engaged in such employment. Scott v. Springfield, 81 Mo. App. 312.

The removal of garbage by a city in this state is a private or corporate function, and not a public or governmental duty. Denver v. Porter, 61 C. C. A. 168, 126 Fed. 288; Barney Dumping-boat Co. v. New York, 40 Fed. 50; Denver v. Davis, 37 Colo. 370, 6 L.R.A.(N.S.) 1013, 119 Am. St. Rep. 293, 86 Pac. 1027, 11 Ann. Cas. 1013, 20 Am. Neg. Rep. 498; Quill v. New York, 36 App. Div. 476, 55 N. Y. Supp. 889, 5 Am. Neg. Rep. 423; Missano v. New York, 160 N. Y. 123, 54 N. E. 744, 6 Am. Neg. Rep. 652.

Negligence may be inferred from the mere fact that a team of horses runs away; or, in other words, the mere running away of a team of horses implies negligence on the part of the owner, and the doctrine of *res ipsa loquitur* applies. Peck v. St. Louis Transit Co. 178 Mo. 617, 77 S. W. 736; Orcutt v. Century Bldg. Co. 201 Mo. 424, 8 L.R.A. (N.S.) 929, 99 S. W. 1062; Denver v. Davis, 6 L.R.A.(N.S.) 1013, note; 34 Cyc. 1665; 29 Cyc. 591, 595; Kahn v. Burette, 42 Misc. 541, 85 N. Y. Supp. 1047; Griffen v. Manice, 166 N. Y. 188, 52 L.R.A. 922, 82 Am. St. Rep. 630, 59 N. E. 925, 9 Am. Neg. Rep. 336; Maus v. Broderick, 51 La. Ann. 1153, 25 So. 977; Gorsuch v. Swan, 109 Tenn. 36, 97 Am. St. Rep. 836, 69 S. W. 1113, 12 Am. Neg. Rep. 632; Strup v. Edens, 22 Wis. 432; Gannon v. Wilson, 1 Sadler (Pa.) 422, 18 W. N. C. 7, 5 Atl. 381; Kokoll v. Brohm & B. Lumber Co. 77 N.

J. L. 169, 71 Atl. 120; Francois v. Hanff, 77 N. J. L. 364, 71 Atl. 1128; Crawford v. Upper, 16 Ont. App. Rep. 440; Unger v. Forty-second Street & G. Street Ferry R. Co. 51 N. Y. 497; Hummell v. Wester, Brightly (Pa.) 133; Tolhausen v. Davies, 59 L. T. N. S. 436, 57 L. J. Q. B. N. S. 392, 52 J. P. 804; Snee v. Durkie (1904) 6 F. 42, 1 Butterworths' Dig. 67; Thane v. Douglass, 102 Tenn. 307, 52 S. W. 155; 1 Thomp. Neg. p. 389.

*Spalding & Shure,* for respondent.

The contract here was to do an act in itself lawful, and, it is to be presumed, in a lawful manner. It did not involve injury to anyone. It was not inherently dangerous. Emmerson v. Fay; 94 Va. 65, 26 S. E. 386; Hilliard v. Richardson, 3 Gray, 349, 63 Am. Dec. 743.

A servant is one who is employed to render personal service to his employer otherwise than in pursuit of an independent calling, and who in such service remains entirely under the control and direction of the employer, who is called his master. Comp. Laws 1913, § 6134; Cal. Civ. Code, § 2009.

An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control, as to the means by which the result is to be accomplished, of anyone, but only as to the results of the work. 26 Cyc. 1546; Taute v. J. I. Case Threshing Mach. Co. 25 N. D. 102, 141 N. W. 134, 4 N. C. C. A. 365; Harrison v. Collins, 86 Pa. 153, 27 Am. Rep. 699; Smith v. Simmons, 103 Pa. 32, 49 Am. Rep. 113; Richmond v. Sitterding, 65 L.R.A. 455, note; Bailey v. Troy & B. R. Co. 57 Vt. 252, 52 Am. Rep. 129; Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017; Humpton v. Unterkircher, 97 Iowa, 509, 66 N. W. 776, 14 Am. Neg. Cas. 595.

If the contract of employment has been reduced to writing, the question whether the person employed was an independent contractor or merely a servant is determined by the court as a matter of law. Linnehan v. Rollins, 137 Mass. 123, 50 Am. Rep. 287; Pioneer Fireproof Constr. Co. v. Hansen, 176 Ill. 100, 52 N. E. 17; Foster v. Chicago, 197 Ill. 264, 64 N. E. 322; Rogers v. Florence R. Co. 31 S. C. 378, 9 S. E. 1059; Emmerson v. Fay, 94 Va. 60, 26 S. E. 386; Central Coal & I. Co. v. Grider, 65 L.R.A. 508, note.

The character of the contract is tested by the existence or absence

of a right of control on the employer's part. Carrico v. West Virginia, C. & P. R. Co. 39 W. Va. 86, 24 L.R.A. 50, 19 S. E. 571; Pioneer Fireproof Constr. Co. v. Hansen, 176 Ill. 100, 52 N. E. 17; Thomp. Neg. p. 909; Powell v. Virginia Constr. Co. 88 Tenn. 692, 17 Am. St. Rep. 925, 13 S. W. 691; Morgan v. Smith, 159 Mass. 570, 35 N. E. 101; Carlson v. Stocking, 91 Wis. 432, 65 N. W. 58; Blake v. Ferris, 5 N. Y. 48, 55 Am. Dec. 304; Smith v. Simmons, 103 Pa. 32, 49 Am. Rep. 113; Foster v. Wadsworth-Howland Co. 168 Ill. 514, 48 N. E. 163; Barg v. Bousfield, 65 Minn. 355, 68 N. W. 45, 16 Am. Neg. Cas. 188; Pickens v. Diecker, 21 Ohio St. 212, 8 Am. Rep. 55; Scammon v. Chicago, 25 Ill. 424, 79 Am. Dec. 334; Hexamer v. Webb, 101 N. Y. 377, 54 Am. Rep. 703, 4 N. E. 755; Hughbanks v. Boston Invest. Co. 92 Iowa, 267, 60 N. W. 640; Hardy v. Shedden Co. 37 L.R.A. 33, note; Central Coal & I. Co. v. Grider, 65 L.R.A. 475, note; Uppington v. New York, 165 N. Y. 222, 53 L.R.A. 550, 59 N. E. 91, 9 Am. Neg. Rep. 115; Hardaker v. Idle Dist. Council [1896] 1 Q. B. 335, 67 L. J. Q. B. N. S. 335, 74 L. T. N. S. 69, 44 Week. Rep. 323, 60 J. P. 196.

A person who hires a contractor to do certain work, and has no immediate control over the servants of the contractor, is not liable to persons injured through the negligence of one of such servants. De Forrest v. Wright, 2 Mich. 368; Riedel v. Moran Fitzsimons Co. 103 Mich. 262, 61 N. W. 509.

Clauses providing that the work shall be done under the direction of the engineer or superintendent, relating to the supervision of the work and other conditions with reference to by-laws and ordinances, do not have the effect of rendering the contractor a servant, nor do they interfere as to any particular method the contractor may employ to do the work, so long as it is done according to the contract. Central Coal & I. Co. v. Grider, 65 L.R.A. 478, note; Larson v. Metropolitan Street R. Co. 110 Mo. 234, 16 L.R.A. 330, 33 Am. St. Rep. 439, 19 S. W. 416; Harrison v. Kiser, 79 Ga. 588, 4 S. E. 320; Vosbeck v. Kellogg, 78 Minn. 176, 80 N. W. 957, 7 Am. Neg. Rep. 86; Callan v. Bull, 113 Cal. 593, 45 Pac. 1017.

"A provision in the contract, that the work is to be done to the satisfaction of the employer's representative," is not such a supervision over the work that it destroys its independent nature. Harding v. Boston, 163 Mass. 14, 39 N. E. 411; Foster v. Chicago, 197 Ill. 264, 64 N. E.

322; Kelly v. New York, 11 N. Y. 432; Frassi v. McDonald, 122 Cal. 400, 55 Pac. 139; Indian Iron Co. v. Cray, 19 Ind. App. 565, 48 N. E. 803; Humpton v. Unterkircher, 97 Iowa, 509, 66 N. W. 776, 14 Am. Neg. Cas. 595; Foster v. Chicago, 197 Ill. 264, 64 N. E. 322; Harding v. Boston, 163 Mass. 14, 39 N. E. 411; Saunders v. Toronto, 26 Ont. App. Rep. 265, reversing 29 Ont. Rep. 273; Uppington v. New York, 165 N. Y. 222, 53 L.R.A. 550, 59 N. E. 91, 9 Am. Neg. Rep. 115; Hardaker v. Idle Dist. Council [1896] 1 Q. B. 335, 65 L. J. Q. B. N. S. 363, 74 L. T. N. S. 69, 44 Week. Rep. 323, 60 J. P. 196; Blumb v. Kansas City, 84 Mo. 112, 54 Am. Rep. 87; Cuff v. Newark & N. Y. R. Co. 35 N. J. L. 17, 10 Am. Rep. 205.

"A city is not liable for injuries caused by the board of public works in disposing of the garbage from the city." Kuehn v. Milwaukee, 92 Wis. 263, 65 N. W. 1030; Ash v. Century Lumber Co. 153 Iowa, 523, 38 L.R.A.(N.S.) 973, 133 N. W. 888, 2 N. C. C. A. 494; Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922; Stewart v. California Improv. Co. 131 Cal. 125, 52 L.R.A. 205, 63 Pac. 177, 724; Frerker v. Nicholson, 41 Colo. 12, 13 L.R.A.(N.S.) 1122, 92 Pac. 224, 14 Ann. Cas. 730; Huff v. Ford, 126 Mass. 24, 30 Am. Rep. 645; Fenner v. Crips Bros. 109 Iowa, 455, 80 N. W. 526, 6 Am. Neg. Rep. 504; Bellatty v. Barrett Mfg. Co. 192 Fed. 229.

It is the duty of cities to keep the streets clean and free of all putrid and other substances which are offensive to the tastes and endanger or imperil the health of the people, and this duty directly devolves upon the health department; and the functions of this department of the city being governmental, and not purely administrative in their nature, it follows that if, in the exercise of such functions, a private citizen is injured by the negligence of one of its servants in and about such work, no right of action arises against the city. Savannah v. Jordon, 142 Ga. 409, L.R.A.1915C, 741, 83 S. E. 109, Ann. Cas. 1916C, 240; Love v. Atlanta, 95 Ga. 129, 21 Am. St. Rep. 64, 22 S. E. 29.

Cleaning the streets and removing ashes and garbage therefrom is a public duty of a city, performed for the protection of the general health, and it is purely a governmental function. Savannah v. Jordon, Ann. Cas. 1916C, 243, note; Haley v. Boston, 191 Mass. 291, 5 L.R.A.(N.S.) 1005, 77 N. E. 888; State v. Howard, 72 Me. 459; Re Vandine, 6 Pick. 187, 17 Am. Dec. 351.

While engaged in such public, governmental work, a city cannot be held in damages for injuries to third persons resulting from the negligence of a person who is performing the actual labor under a contract and according to his own method and manner of doing the work, and who is responsible to the city or to its proper representative only to the extent of doing the work as provided by his contract. Kuehn v. Milwaukee, 92 Wis. 263, 65 N. W. 1030; Condict v. Jersey City, 46 N. J. L. 157; Comp. Laws 1913, § 3818, ¶ 9; Nicholson v. Detroit, 129 Mich. 246, 56 L.R.A. 601, 88 N. W. 695; Gillespie v. Lincoln, 35 Neb. 34, 16 L.R.A. 352, 52 N. W. 811; Ogg v. Lansing, 35 Iowa, 495, 14 Am. Rep. 499; Eastman v. Meredith, 36 N. H. 284, 72 Am. Dec. 302; Russell v. Tacoma, 8 Wash. 156, 40 Am. St. Rep. 895, 35 Pac. 605; Kies v. Erie, 135 Pa. 144, 20 Am. St. Rep. 867, 19 Atl. 942; Evans v. Sheboygan, 153 Wis. 287, 45 L.R.A.(N.S.) 98, 141 N. W. 265; Kempster v. Milwaukee, 103 Wis. 421, 79 N. W. 411; Bruhnke v. LaCrosse, 155 Wis. 485, 50 L.R.A.(N.S.) 1147, 144 N. W. 1100; Gregg v. Hatcher, 94 Ark. 54, 27 L.R.A.(N.S.) 138, 125 S. W. 1007, 21 Ann. Cas. 982; Bolster v. Lawrence, 225 Mass. 387, L.R.A.1917B, 1285, 114 N. E. 722; Tindley v. Salem, 137 Mass. 171, 50 Am. Rep. 289.

The mere fact that a team of horses runs away and injury results, does not raise the presumption of negligence, either as against the owner or the driver. Metropolitan Casualty Ins. Co. v. Clark, 145 Wis. 181, 37 L.R.A.(N.S.) 717, 129 N. W. 1065; 3 N. C. C. A. 532; Rowe v. Such, 143 Cal. 573, 66 Pac. 862, 67 Pac. 760; Creamer v. McIlvain, 89 Md. 343, 45 L.R.A. 531, 73 Am. St. Rep. 186, 43 Atl. 935, 6 Am. Neg. Rep. 547; McGahie v. McClennen, 86 App. Div. 263, 83 N. Y. Supp. 692; Gray v. Tompkins, 40 N. Y. S. R. 546, 15 N. Y. Supp. 953; Coller v. Knox, 222 Pa. 362, 23 L.R.A.(N.S.) 171, 71 Atl. 539; O'Brien v. Miller, 60 Conn. 214, 25 Am. St. Rep. 320, 22 Atl. 544; Button v. Frink, 51 Conn. 342, 50 Am. Rep. 24; Patton-Worsham Drug Co. v. Drennon, 104 Tex. 62, 133 S. W. 871, 3 N. C. C. A. 859.

BRUCE, Ch. J. (after stating the facts as above). Two propositions are advanced in support of the demurrer to the complaint:

(1) That the garbage collector was an independent contractor, and, being such, the city was not liable for his negligence.

(2) That even if the said collector was not an independent contractor, the city was acting in a public and governmental capacity and was therefore not liable.

And, first, Was the said Nels Johnson an independent contractor? Is or is not the appellant correct in his contention that "one who performs services for a city in the matter of removing garbage under a written contract which contains a provision that he is 'to furnish said teams and men or such number thereof as in the judgment of said city may be necessary for the delivery and disposal of said garbage,' and which contains this further provision, viz.: 'The entire work to be done in a good and substantial manner with the approval and acceptance of the city, and under the supervision and direction of the commissioner of health, or such agent or agents as he may appoint for that purpose; such teams and equipment to be acceptable and satisfactory to said health commissioner,' is a servant of the city, and not an independent contractor."

We are satisfied that the said Nels Johnson was an independent contractor, and not a servant of the defendant city.

According to § 6134 of the Compiled Laws of 1913, "a servant is one who is employed to render personal service to his employer, otherwise than in pursuit of an independent calling, and who in such service remains *entirely* under the control and direction of the latter, who is called his master."

This definition of a servant, where it is sought to distinguish between a servant and an independent contractor, affords by inference a definition of an independent contractor, an independent contractor being considered a person employed to execute work, who is not within the definition of a servant.

The question whether the employee is an independent contractor, says the supreme court of Kentucky, may be determined by answering the following questions: Who has the general control of the work? Who has the right to direct what shall be done, who shall do it, and how it shall be done? See Mason & H. Co. v. Highland, — Ky. —, 116 S. W. 322; Madisonville, H. & E. R. Co. v. Owen, 147 Ky. 1, 5, 143 S. W. 421.

"An 'independent contractor' is one who is independent of his employer in the doing of his work, and may work when and how he

prefers. A 'servant' is one who is employed by another and is subject to the control of his employer." Messmer v. Bell & C. Co. 133 Ky. 19, 25, 117 S. W. 346, 19 Ann. Cas. 1.

"The right to control the conduct of another implies the power to discharge him from the service or employment for disobedience; and, accordingly, the power to discharge has been regarded as the test by which to determine whether the relation of master and servant exists." 1 Thomp. Neg. §§ 579, 629.

"The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished; or, in other words, 'not. only what shall be done, but how it shall be done.' " Singer Mfg. Co. v. Rahn, 132 U. S. 518, 33 L. ed. 440, 10 Sup. Ct. Rep. 175; Huffcut, Agency 9; Taute v. J. I. Case Threshing Mach. Co. 25 N. D. 102, 141 N. W. 134, 4 N. C. C. A. 365; notes in 65 L.R.A. 445 and 17 L.R.A. (N.S.) 371.

"The test is very much this; viz., whether the person charged is under the control and bound to obey the orders of another." Reg. v. Negus, L. R. 2 C. C. 37, 42 L. J. Mag. Cas. N. S. 62, 28 L. T. N. S. 646, 21 Week. Rep. 687, 12 Cox, C. C. 492, 1 Am. Crim. Rep. 150.

There can be no doubt that under these general tests the relation of master and servant did not exist; and the mere fact that the contract states that the collector was "to furnish said teams and men or such number thereof as in the judgment of the health commissioner of said city may be necessary for the delivery and disposal of garbage;" and that the contract further provides that the work shall be done "under the provision of the ordinance known as the 'garbage ordinance' to the full satisfaction and acceptance of the city,—and under the supervision and direction of the commissioner of health,—and that such teams and equipment and men shall be acceptable and satisfactory to said health commissioner," does not change the situation.

It is true that the men and the teams and the work were required to be satisfactory to the health commissioner, but this was for the purpose of the public health, and the health commissioner would have had a voice in the matter even though the contract and ordinance under which it was let had not so provided.

The health commissioner had no power to discharge men; he had no

power to say how hard they should work; he had no power to say what their wages should be; nor did the contract itself dictate in these matters.

His supervision was for the protection of the public health and for that purpose alone.

The city health officer or commissioner, indeed, exercises a public, and not a private or municipal, function. His office is provided for by the statutes, and in cities which, like Fargo, are under the commission form of government, he has all the power and authority which are conferred by the general statutes upon city boards of health. He represents the state and the city in their governmental, and not in their corporate or property owning, capacities. He would have possessed the powers given to him by the contract even if the instrument had been silent upon the subject. See §§ 3820 and 411 to 433, Compiled Laws of 1913.

We are also satisfied that, in disposing of its garbage and in letting the contract in question, the city of Fargo was acting in its governmental, and not in its private or corporate, capacity.

There is only one purpose for our municipalities entering so largely into this work as they do to-day, and that is the preservation of the public health; and in every enlightened land this aid and protection always has been and always will be considered a primary duty which devolves upon the state in its sovereign power. Savannah v. Jordon, 142 Ga. 409, L.R.A.1915C, 741, 83 S. E. 109, Ann. Cas. 1916C, 240 and note 243; Love v. Atlanta, 95 Ga. 129, 21 Am. St. Rep. 64, 22 S. E. 29; Watson v. Atlanta, 136 Ga. 370, 71 S. E. 664; Haley v. Boston, 191 Mass. 291, 5 L.R.A.(N.S.) 1005, 77 N. E. 888; Re Vandine, 6 Pick. 187, 17 Am. Dec. 351; Kuehn v. Milwaukee, 92 Wis. 263, 65 N. W. 1030; see also Nicholson v. Detroit, 129 Mich. 246, 56 L.R.A. 601, 88 N. W. 695; Ogg v. Lansing, 35 Iowa, 495, 14 Am. Rep. 499; Bolster v. Lawrence, 225 Mass. 387, L.R.A.1917B, 1285, 114 N. E. 722.

If, indeed, as has generally been held, the protection of the lives and property of its citizens from loss by fire is a governmental function, and to such an extent that the city is not liable for the negligence of its firemen either in putting out or failing to put out a fire, or for accidents while the engines and carts are going to and from fires, or

of its servants in removing ashes and inflammable material, how much less should the city be held liable for acts done in seeking to protect its citizens from dangers which are much more insidious and extensive? See 28 Cyc. 1303; State v. Howard, 72 Me. 459; Re Vandine, 6 Pick. 187, 17 Am. Dec. 351; Condict v. Jersey City, 46 N. J. L. 157; Gillespie v. Lincoln, 35 Neb. 34, 16 L.R.A. 352, 52 N. W. 811; Kies v. Erie, 135 Pa. 144, 20 Am. St. Rep. 867, 19 Atl. 942.

We realize that there are some decisions of the courts of New York and Colorado which seem to hold to a contrary view than that expressed by us, but we are not persuaded thereby.

The judgment of the District Court is affirmed.

Grace, J. (dissenting). The appeal in this case is from an order sustaining a demurrer to the complaint.

The complaint alleges in substance that Mons Montain came to his death by being struck by a garbage sled which at the time was drawn by a runaway team. Mons Montain, at the time he met his death, was in the employ of the city of Fargo, he being superintendent of the garbage or dumping ground.

It appears that the city of Fargo had entered into an agreement with one Nels Johnson, in writing, whereby the said Johnson was to furnish four teams and eight men, or any number of teams at the rate of $147 a month for each team and two men, to haul said garbage from the city of Fargo during the year 1915. According to the agreement the work was to be done under the provisions of the ordinance of such city, known as the "garbage ordinance," and was to be performed to the full satisfaction and acceptance of said city, and to be done in a good and substantial manner, and in such manner as to meet the approval and acceptance of the city, and all such work to be done under the supervision and direction of the commissioner of health, or such agent or agents as he might appoint for that purpose. Such agreement also provided that the teams, equipment, and men should be acceptable and satisfactory to the health commissioner. The city reserved the right to cancel the agreement upon ten days' notice, upon Johnson's failure to comply in all respects with the terms and conditions of the contract and the provisions of the ordinance.

The city of Fargo, the defendant, seeks to escape liability for its

negligence upon two theories: First, that Johnson was an independent contractor, and, being such, the city was not liable for his negligence. Second, that even if Johnson was not an independent contractor, and even if he was the agent of the city, so that the city would be liable for his negligent acts in and about performing the work for the city for which he was employed, the city would not be liable, notwithstanding such facts, for the reason that in disposing of such garbage it claimed to be acting in a governmental capacity, and claimed for this reason to be immune from liability.

Upon investigation and analysis of the first legal proposition, it is perfectly clear that Johnson was not an independent contractor, but merely a servant of the city of Fargo. The relation between the city of Fargo and Johnson was one of master and servant, and not the relation of independent contractor. Under the very terms of the written agreement which Johnson had with the city of Fargo, when such contract is examined in the light of the law of master and servant, there remains no doubt of the fact that Johnson was a servant of the city. The term, "independent contractor," is one difficult of definition. It is difficult to distinguish the line of demarcation by which independent contractors may be separated from servants. It appears to us, there may be such a person as an independent contractor. A contract may be made in which one of the contracting parties would and could be an independent contractor. The great difficulty appears to be in the efforts so often resorted to by endeavoring to make a relationship which is purely one of master and servant fit into the relationship of that of independent contractor for the purpose of avoiding liability which in case of injury or damage would naturally flow from the relationship of master and servant, thus seeking security under the protecting principle upon which the relationship of independent contractor is founded. Where the law of master and servant is for our consideration there is no difficulty in applying the law. The relationship of the master to his servant is well understood, and his duties and liabilities are easily discernible. If the master is negligent in the execution of his duties, and his servant is injured through the negligence of such master in the performance of his plain duties towards the servant, liability of the master towards the servant naturally follows. It is different with the law of independent contractor. It seems that the relationship or principle of

independent contractor, and the law relating thereto, are somewhat shadowy and uncertain. The relationship is not a common one, except that it has been made more common in recent years in an effort to shift or avoid liability. When an independent contract is made, it is made by a person who contracts to have a certain job of work done, who is called a contractor, with a person who contracts to do the job of work, who is called an independent contractor. Why the invention of this comparatively new term, "independent contractor?" The answer is, it is a means by which in a proper case a person for whom the work is to be done, or in other words, the contractor, may avoid his liability for any damages to any person who may be engaged in assisting in the performance of the work to be done. As before indicated, there are conditions, and certain quantities of work to be done, to which the principle is applicable. To the application of the principle in a proper case there can be no objection. The abuse of the principle is, in seeking to apply it in cases and to conditions to which it is not germane.

Without following any particular set definition which we have found and examined in different authorities concerning the relationship of independent contractor, but taking such definitions into consideration and applying also other language which we think may throw some light upon the relationship of independent contractor, we find the meaning of "independent contractor" to be as follows: An independent contractor may be defined as one exercising an independent employment *in which he is skilled,* who, having entered into a contract to do certain work, does his work according to his own way and method, independent of any methods submitted by another, and who is not subject to the control of any person in the execution of his work; being responsible only for the result of his work; doing all the work at his own risk and cost in the first instance, and furnishing all means and power by which such work is done; and who contracts to do a complete quantity or job of work at a stated price for the whole of such work, which is to be considered as the price for which the whole work is to be done, and not as wages; and who cannot be discharged at the will of the person with whom the contract is made, or because the person with whom the independent contractor has made the agreement is dissatisfied with the work. Measured by this definition and by the terms of the written contract between Johnson and the city of Fargo, Johnson was merely

a servant of such city. It will be noticed, from a consideration of such written contract, that all work performed by Johnson for the city was to be supervised and controlled by the city. The city reserved certain power in such contract whereby it could supervise and direct the means and the method of doing such work; for the contract specifically says, "Such teams, equipment, and men to be acceptable and satisfactory to the health commissioner." And again, the entire work was to be done in a good and substantial manner, and this means, they could determine the quality of the work and the manner in which it was performed. The contract further says that the work shall be done in such a manner as to meet the "approval and acceptance of the city." We can easily understand that, if the city did not approve of any work done, the so-called independent contractor would have to do the work in a different manner so as to merit the approval of the city; and thus we see the city really directed the doing of the work. The city could enforce all these demands, directions, and requirements in what way? The answer is in the contract itself,—by discharging the independent contractor upon ten days' notice. Or, in other words, by canceling the contract upon ten days' notice, which is in fact a discharge of the independent contractor. These are not the rights and remedies of one who contracts with an independent contractor. Where one contracts with an independent contractor for a complete job of work at a certain price, he permits such independent contractor to do such work according to his own manner and method of performing such work; but if the work is not satisfactory to the person with whom the independent contractor has made the agreement, such person cannot discharge the independent contractor; but if the work which the independent contractor agreed to do is not done in such a manner as to bring about the result which was contracted to be brought about, the one who made the contract with the independent contractor has a complete remedy in refusing to pay the price stated in the contract, by reason of the failure of the independent contractor to bring about the result he contracted to bring about. In the case of Schular v. Hudson River R. Co. 38 Barb. 653, the court said: "Perhaps the most usual test by which to determine whether the person doing the injury was *a servant or an independent contractor is to consider whether he was working by the job or at stated wages,*— so much per day, week, or month. A person who works for wages,

whose labor is directed and controlled by the employer either in person or by an intermediate agent, is a servant, and the master must answer for a wrong done by him in the course of his employment. A person who for a stated sum engages to perform a stated piece of labor in which he is skilled, the proprietor of the work leaving him to his own methods, is an independent contractor. The proprietor does not stand in the relation of superior to him, and is not answerable for the wrongs done by him or his servants in the prosecution of his work, unless special circumstances exist making him so. The fact that the employee was hired, not for a definite time, but to perform a particular job, does not, however, of itself negative the relation of master and servant, for under such a contract the employer may well retain full control over him; and it must constantly be borne in mind that the power to control on the part of the employer is the essential fact establishing the relation."

Jensen v. Barbour, 15 Mont. 582, 39 Pac. 906; Bibb v. Norfolk & W. R. Co. 87 Va. 711, 14 S. E. 163; Fink v. Missouri Furnace Co. 82 Mo. 276, 52 Am. Rep. 376; Norfolk & W. R. Co. v. Stevens, 97 Va. 631, 46 L.R.A. 367, 34 S. E. 525; Waters v. Pioneer Fuel Co. 52 Minn. 474, 38 Am. St. Rep. 564, 55 N. W. 52; Indiana Iron Co. v. Gray, 19 Ind. App. 565, 48 N. E. 803; Majors v. Connor, 162 Cal. 131, 121 Pac. 371; Perkins v. Blauth, 163 Cal. 782, 127 Pac. 50; Nelson v. American Cement Plaster Co. 84 Kan. 797, 115 Pac. 578; Johnson v. Carolina, C. & O. R. Co. 157 N. C. 382, 72 S. E. 1057; Swanson v. Schmidt-Gulack Elevator Co. 22 N. D. 563, 135 N. W. 207; Singer Mfg. Co. v. Rahn, 132 U. S. 518, 33 L. ed. 440, 10 Sup. Ct. Rep. 175; Sacchi v. Bayside Lumber Co. 13 Cal. App. 72, 108 Pac. 885; Atlantic Transport Co. v. Coneys, 28 C. C. A. 388, 51 U. S. App. 570, 82 Fed. 177; Campbell v. Lunsford, 83 Ala. 512, 3 So. 522, 13 Am. Neg. Cas. 164; Giacomin v. Pacific Lumber Co. 5 Cal. App. 218, 89 Pac. 1059; Linnehan v. Rollins, 137 Mass. 123, 50 Am. Rep. 287; DePalma v. Weinman, 15 N. M. 68, 24 L.R.A.(N.S.) 423, 103 Pac. 782; Potter v. Seymour, 4 Bosw. 140; Goldman v. Mason, 18 N. Y. S. R. 376, 2 N. Y. Supp. 337; Hawke v. Brown, 28 App. Div. 37, 50 N. Y. Supp. 1032; Baldwin v. Abraham, 171 N. Y. 677, 64 N. E. 1118; Pickens v. Diecker, 21 Ohio St. 212, 8 Am. Rep. 55; Smith v. Humphreyville, 47 Tex. Civ. App. 140, 104 S. W. 495; Kniceley v. West Virginia Midland Co. 64 W. Va. 278, 17 L.R.A.(N.S.) 370, 61 S. E. 811; Lacour

v. New York, 3 Duer, 406; New Orleans, M. & C. R. Co. v. Hanning, 15 Wall. 649, 21 L. ed. 220.

In the light of the language of the written contract, the authorities cited by the majority opinion sustain our contention that in this case Johnson was a servant of the city of Fargo, and not an independent contractor. The majority opinion contains the following, citing 1 Thomp. Neg. §§ 579, 629: "The right to control the conduct of another implies the power to discharge him from the service or employment for disobedience; and, accordingly, the power to discharge has been regarded as the test by which to determine whether the relation of master and servant exists."

Keeping in mind that the written contract in question between Johnson and the city of Fargo provides that the city may, upon ten days' notice, cancel the contract if the second party fails to comply with the terms and provisions thereof, and the provisions of the ordinance, it simply means that the city can for such causes discharge Johnson upon ten days' notice by cancelation of his contract; his relation to the city of Fargo is that of servant, and not an independent contractor, when measured even by the authorities relied upon by the majority. The majority opinion further says: "The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished." Then follows in the majority opinion numerous authorities in support of this point. We accept the law contained in the quotation, and believe, when the language of the contract is carefully examined, our interpretation thereof is sustained by all of the law cited by the majority in relation to defining master and servant. The city in this case had the right to decide the manner in which the work was done; for it had to be done in a manner which suited them and which met with their approval. And the city, also, not only had the authority by the contract to decide the manner in which the work was to be done by refusing to accept it until it was done to suit them, and thus they determined the result to be accomplished. When we add to this the right to discharge Johnson by giving him ten days' notice and canceling his contract, all the elements by which we determine when one is a master are supplied.

The second question to be considered in this case is, Was the city

acting in a governmental capacity in causing the removal and disposition of the garbage? We are clear, so far as the facts of this case are ascertained from the pleadings, that the city, when removing and disposing of such garbage, was not acting in a governmental capacity, but was merely engaged in the performance of a ministerial duty. It is a well-settled rule that where it is the duty of a municipal corporation, by statute or implication of law, to keep its streets in a reasonably safe condition for public travel, such duty cannot be delegated to another so as to relieve the municipal corporation from liability for injury sustained by another on account of the neglect or failure of the municipal corporation to observe its duty. This principle is established in a long line of authorities.

Sterling v. Schiffmacher, 47 Ill. App. 141; Springfield v. Scheevers, 21 Ill. App. 203; Anna v. Boren, 77 Ill. App. 408; Louisville City R. Co. v. Louisville, 8 Bush, 415; Birmingham v. McCary, 84 Ala. 469, 4 So. 630; Jacksonville v. Drew, 19 Fla. 106, 45 Am. Rep. 5; Betz v. Limingi, 46 La. Ann. 1113, 49 Am. St. Rep. 344; 15 So. 385; Baker v. Grand Rapids, 111 Mich. 447, 69 N. W. 740, 1 Am. Neg. Rep. 90; Blake v. St. Louis, 40 Mo. 569; Welsh v. St. Louis, 73 Mo. 71; Russell v. Columbia, 74 Mo. 480, 41 Am. Rep. 325; Davis v. Omaha, 47 Neb. 836, 66 N. W. 859; Beatrice v. Reid, 41 Neb. 214, 59 N. W. 770; Omaha v. Jensen, 35 Neb. 68, 37 Am. St. Rep. 432, 52 N. W. 833; Scanlon v. Watertown, 14 App. Div. 1, 43 N. Y. Supp. 618; Storrs v. Utica, 17 N. Y. 104, 72 Am. Dec. 437; McAllister v. Albany, 18 Or. 426, 23 Pac. 845; Williams v. Tripp, 11 R. I. 447; Watson v. Tripp, 11 R. I. 98, 23 Am. Rep. 420; Nashville v. Brown, 9 Heisk. 1, 24 Am. Rep. 289; Patterson v. Austin, — Tex. Civ. App. —, 29 S. W. 1139; Morris v. Salt Lake City, 35 Utah, 474, 101 Pac. 373; McCoull v. Manchester, 85 Va. 579, 2 L.R.A. 691, 8 S. E. 379; Drake v. Seattle, 30 Wash. 81, 94 Am. St. Rep. 844, 70 Pac. 231.

The duty of a city to keep its streets in a reasonably safe condition for public travel, and to keep them in repair and in proper condition, is mostly for the benefit of the city itself; and such duty extends to, and includes, keeping the streets cleaned and the removal of garbage. The removal of garbage, ashes, rags, and papers, and other débris which may accumulate upon the streets, is to be classified and comes under the duties incumbent upon the city to keep its streets and alleys in a safe

38 N. D.—29.

and good condition of repair, and the removal of the garbage and *débris* from the streets is part of the duty of repair and care of streets and alleys. Missano v. New York, 160 N. Y. 123, 54 N. E. 744, 6 Am. Neg. Rep. 652.

Dillon on Municipal Corporation says that such corporations are possessed of dual power,—the one governmental, legislative, or public, and the other proprietary or private; that the care of the streets is within the latter classification. See Dill. Mun. Corp. 4th ed. § 980 and § 66. This principle is also sustained in Conrad v. Ithaca, 16 N. Y. 158.

The liability of municipalities as to the care of streets has been recognized in a great number of cases, among which is found Barnes v. District of Columbia, 91 U. S. 540, 23 L. ed. 440, and Barney Dumping-boat Co. v. New York, 40 Fed. 50. In the latter case Judge Wallace, referring to the commissioner of street cleaning, says: "His duties, unlike those of the officers of the departments of health, charities, fire and police, although performed incidentally in the interest of public health, are more immediately performed in the interest of the corporation itself, which is charged with the obligation of maintaining its streets in fit and suitable condition for the use of those who resort to them."

So, in the case at bar, Johnson, even though under the contract he was to work under the direction of the health commissioner, nevertheless the work he did do was performed more particularly in the interest of the city itself than that of the public. While the removal of the garbage and *débris* of all kinds from the streets may incidentally be for the public health, the greater benefit is to the city, and the removal thereof is a part of the duty of such city of keeping the streets in repair, and the duty is purely ministerial and principally for the benefit of the city. There is a distinction between the liability of municipal corporations who have accepted a city charter, and such corporations as counties and townships. The former, the municipal corporations, are always under greater liability.

In the case of Circleville v. Sohn, 59 Ohio St. 285, 69 Am. St. Rep. 777, 52 N. E. 788, 5 Am. Neg. Rep. 704, we find the following in the syllabus: "The duty enjoined by statute on municipal corporations to keep their public ways open in repair and free from nuisance is min-

isterial and mandatory, and requires the removal from such ways of all dangerous defects, and obstructions, from whatever cause arising."

We are of the opinion that it is the ministerial duty also of the city to keep its streets clean, to remove garbage therefrom, and to keep them in a sanitary condition; and the removal of such garbage is a ministerial duty principally in the interest of the city itself; and the duty to so keep its streets clean is a ministerial, and not a governmental, function. The test which has generally been applied is, "If the duty in respect to which there has been a wrongful act or omission *is one resting primarily upon municipalities, and is not a mere governmental duty, the performance of which has been delegated to the municipality by competent legislative authority, then the liability of the municipality is substantially that of a private corporation.* We are convinced that the duty of cleaning the streets, removing garbage and *débris* therefrom in the city, is a duty connected with the care and repair of such streets, and is a duty resting primarily upon the municipality for its own convenience and benefit principally, although the general public may be benefited to some extent incidentally."

Up to this point we have been discussing more particularly the duties of a municipality with reference to the care and repair of its streets and alleys, and also its liability when negligent in performing such duties. The removal of garbage and other accumulations, such as ashes, etc., from its streets and alleys so as to keep them in a safe and clean condition, is without question a municipal ministerial duty. The garbage contract in question relates more particularly to the removal of garbage from private property, such as the removal of scraps of meat, and other refuse which is thrown away after meals, also papers, rags, and other waste material which a private owner discards. It is plain to us that the disposition of all of such material and refuse in a proper manner is a duty which primarily belongs to the owner of the private property. It is the duty of every owner of private property, whether the same is in use or not, to keep it in a clean, sanitary condition, and in such a condition that no nuisance will be maintained thereon which would be offensive to other persons within said municipality, or which would endanger the comfort and health of the community, or result in the interference to others with the full enjoyment and pleasure of their rights and property. The municipality, therefore, could require every

owner of private property to so maintain his premises and keep it in a clean and sanitary condition.

The defendant in this case is under the commission form of government, and has the right, power, and authority by the law under which it is organized, which fully sets forth all its powers and duties, to inspect all private premises, and cause to be removed therefrom and abated any condition thereon maintained in the nature of a nuisance, and which would tend to interfere with the comfort of the inhabitants of the municipality, or which could in any manner be offensive to the inhabitants of such municipality. This would include the power, therefore, to cause to be removed all refuse of every kind and description found upon said private premises by the inspector or overseer, who may be appointed by the municipality. Such refuse accumulated upon private property is usually, but not always, placed in receptacles with proper covers thereto, which receptacles are placed in a convenient manner near the alley or other convenient place for removal.

We have seen that it is the primary duty of the private owner of such property to remove all such refuse. If the municipality therefore undertakes to perform this private duty for the convenience, comfort, protection, and health of the municipality, and considers it can do it in a better way and manner than the private property owner could do, in the removal of such refuse the municipality is acting and doing such work mostly in behalf and for the convenience and comfort of the inhabitants of such city, and the public at large can receive only very slight individual benefit, and hence the performance of such service by the city is not a governmental, but a ministerial, duty. If the city in the performance of such ministerial duty does the same in a negligent manner so as to cause an injury to some person, it cannot escape liability any more than the private owner of the property from which such refuse is removed could escape liability if he had removed the refuse, and in the course of such removal acted so negligently as to cause injury to another.

Our court in the case of Ludlow v. Fargo, 3 N. D. 485, 57 N. W. 506, said in the syllabus of such case: "Cities which have been organized or reorganized under the general law of this state . . . are charged with full power and responsibility in the matter of the streets, sidewalks, and crossings within their limits; and the duty of estab-

lishing streets and removing obstructions therefrom is a duty expressly enjoined by the statute. In performing such duties, cities are liable in a civil action to persons who in the exercise of due care receive injuries caused by negligent acts done *either by the city officials, or others who are acting for the city and under its authority. The cities so organized and governed are impliedly liable for damages caused by their wrongful or negligent acts, and no express statute making them liable is necessary.* Accordingly, held that the following instruction given by the trial court to the jury is not error: 'The general rule is that, in the case of a highway, a municipal corporation is answerable in damages for the lack of ordinary and reasonable care, *and is held to the same rule of negligence which is expected of private persons in the conduct of their business, involving a like danger to others.*' "

We see, therefore, in this case the city assumed the duty of removing the garbage for private persons, and even in the absence of a statute they are impliedly liable for their negligent acts just the same as the private owner would have been.

Another case of importance is Grand Forks v. Paulsness, 19 N. D. 293, 40 L.R.A.(N.S.) 1158, 123 N. W. 878. This was a case in which the city was held liable in the United States district court for the district of North Dakota. The waterworks of said city were owned by it. They became out of repair. They were repaired by a licensed plumber in the employ of the city of Grand Forks under the direction of the superintendent of the waterworks. In making such repairs an obstruction was placed upon the street by reason of which Paulsness was injured, and the city was held liable for its negligence, and plaintiff recovered a verdict against it. While in this case the recovery was had by reason of the negligence of the city in keeping its streets in an unsafe condition, nevertheless, if water had escaped through the negligence of the city in the management of its waterworks, and overflowed and destroyed property, there is no doubt in our mind but what it can be held liable for such damage.

Where a municipality undertakes to maintain a waterworks system and to supply its citizens with water for pay, it is liable to individuals whose property is injured by the negligence of its employees, placed in charge of the plant, failing to maintain it in a safe condition. Piper v. Madison, 140 Wis. 311, 25 L.R.A.(N.S.) 239, 133 Am. St. Rep.

1078, 122 N. W. 730. And where the municipal corporation uses its waterworks system for protection against fire, it is not relieved from liability to private property through the negligence of its employees in maintaining the plant in an unsafe condition, except for such acts as are performed in the actual work incident to extinguishing fires. In such case the city is performing an act for a private party for which it gets pay. However, in the case in question, in the removal of the garbage the act of the city is also the performance of an act for a private party, and the city reimburses itself through taxation. The fact that the city receives no pay, and that such work is paid for through the channel of taxation, does not detract from the fact that the disposal of the garbage is a duty incumbent upon the private owner of the premises; and where the municipality undertakes to perform such a duty in place of the owner of the premises, such work is to be considered rather in the nature of a private act on the part of the city, than a public duty, for the reason that the benefits derived from such performance accrue to the owners of private property and the inhabitants of the city. Where the city is organized and receives its charter from the state, either under a special grant or under the general law, it is as a general rule its ministerial duty under either of such grants to keep its streets in a safe condition, and to keep the city as a whole in a clean, healthful, and sanitary condition. We believe this is a part of the ministerial duty which the city obligates itself to perform; and if in the execution of such duty it acts negligently, like other corporations, it is liable for such negligence.

In Denver v. Davis, 37 Colo. 370, 6 L.R.A.(N.S.) 1013, 119 Am. St. Rep. 293, 86 Pac. 1027, 11 Ann. Cas. 187, 20 Am. Neg. Rep. 498, we find the following in the syllabus: "The maintenance of a dump for the reception of waste materials gathered from the streets, alleys, and private premises of a city, is for its private and corporate convenience, so that the city will be liable in case it is so negligently managed that fire spreads from it and destroys property in the vicinity, *although the supervision of the dump is in the health department.*"

The principle in question in Denver Case is, we believe, applicable to the case at bar. After a sewage system has once been completed and placed in operation, the maintenance, conduct, and operation thereof becomes merely a ministerial duty. If the municipality should be neg-

ligent in the performance of such ministerial duty, and should leave the manholes uncovered so that a person should fall therein and be injured, or if the pipe should break and private property should be injured thereby,—should become flooded and not usable,—it can hardly be said that the city would not be liable for its negligence on the ground that they were engaged in the execution of a governmental power. Garbage in a large sense is sewage. It is the coarser material that cannot be safely put through the sewer for fear of blocking the sewer pipe, and hence must be hauled rather than put through the sewer pipe. But properly speaking it may be classed under the head of sewage; and if the municipality is negligent in its removal, having undertaken to remove the same, and having undertaken to perform the duties which really belong to the owner of the premises from which such garbage is taken, it must use ordinary care in performing its duty; and if it fails to do so, and is negligent, it is liable for damages by reason of such negligence.

The question, whether or not Johnson was an independent contractor was not exclusively a question of law for the court. It was a mixed question of law and fact, and thus became exclusively a question for the jury. The plaintiff was not a party to the written contract, and contended that the contract did not express the true relations of the parties thereto. 14 R. C. L. 78. For this reason Johnson's relations to the city of Fargo, whether he was an independent contractor or a mere servant, was a mixed question of law and fact. The demurrer should have been overruled, and such question submitted to the jury.

We are clear that the city of Fargo, in removing or causing to be removed the garbage from private premises or from its streets and alleys, and keeping them in a clean condition, was acting in a purely ministerial, and not a governmental capacity, for the benefit of itself and its citizens principally; and that, in employing Johnson to remove such garbage, the relation was established between the city and Johnson of master and servant. We are clear the demurrer should be overruled.